## FALLS v. WEISSINGER.

11 801<br>131 169

1. Where a bond is executed under an order in chancery, conditioned that certain slaves that had been seized to satisfy such decree as might be "rendered in the suit," should be returned, if the decree contemplated

Falls v. Weissinger.

their return, the bond is not annulled, or the liability of the obligors restricted or impaired, by an amendment of the bill which merely associates other parties with the complainant, (the obligee,) without varying the frame of the bill, or extending or limiting the liability of the obligors.

2. There is no statute which requires the sheriff to return "forfeited," a bond taken in a suit in chancery, conditioned for the forthcoming of property if the decree requires it; consequently the obligee may maintain an action thereon, without showing such a return.

3. Where a bill is filed to subject a slave to the payment of the complainant's demand, and the defendant executes a bond with surety, conditioned for his delivery if the complainant is successful, the death of the slave previous to the rendition of the decree, or an order requiring his delivery, will absolve the obligors from a compliance with the condition.

4. Where the defendant pleads the performance of the condition of his bond generally, and another affirmative and more special plea which was good in itself, but the matter of which is admissible under the plea of performance, if a demurrer is sustained to the second plea, an appellate court will not refuse to reverse the judgment, because the defendant could have had the benefit of it under the pleadings on which the cause was tried; unless it appears that he in fact availed himself of such special defence.

Writ of Error to the Circuit Court of Lowndes.

THIS was an action of debt, at the suit of the defendant in error, on a bond executed by the plaintiffs in error, with three other persons on whom the process was not served. The bond was taken under an order in chancery, by which certain slaves and other property were seized to satisfy such decree as might be "rendered in the suit;" and was executed with the condition that they should be returned, if the decree contemplated it. After the execution of the bond, there was an amended and supplemental bill by which several other persons were made complainants together with the obligee. It is then alledged that a final decree was rendered in favor of the complainants, which required the return of the slaves according to the undertaking of the obligors; and that the defendants had failed to perform the condition, &c.

The defendants pleaded that they had all the slaves mentioned in the condition of their bond ready to satisfy the decree in chancery, except one named John, who died before the rendition of the decree; and that they did actually deliver the surviving slaves to the sheriff. To this plea there

was demurrer, which being sustained, an issue was submitted to a jury, who returned a verdict for the plaintiff for $600 debt, $87 20 damages, and judgment was rendered accordingly.

BOLING, for the plaintiffs in error, made the following points: 1. The circuit court erred in not sustaining the demurrer to the declaration. [1 Stewt. R. 10; 1 Por. R. 187.] 2. In not sustaining the demurrer to the pleas which alledged the death of the slave John, as an excuse for his non-delivery. [2 Stewt. & P. Rep. 344; 5 Id. 123.]

C. G. EDWARDS, for the defendant in error, insisted that the defendant below was not prejudiced by sustaining the demurrer to his pleas, as the pleas on which issues were submitted to the jury would admit evidence of the facts set forth in the former, if these facts constituted an available defence. [4 A. R. 230.] The death of the slave pending the litigation in chancery is a loss which must fall upon the obligors—it may be assimilated to the destruction of the chattel pending the action of *detinue*, which it has been repeatedly held does not absolve the defendant from liability. [8 T. Rep. 259; 2 Eng. C. L. Rep. 281; 5 Stewt. & P. Rep. 123; 8 Por. Rep. 564; 2 Ala. Rep. 555.]

COLLIER, C. J.—The filing of the amended and supplemental bill, by which other parties were associated with the complainant, the obligee, did not, so far as the pleadings inform us, vary the frame of the bill or ask other and different relief from that sought in the first instance. It did not in any manner extend or limit the liability of the obligors; nor does it appear to have restricted or impaired the rights of the obligee. The declaration then could not have been adjudged bad on demurrer merely because new parties were introduced upon the record after the execution of the replevy bond.

There was no necessity for the sheriff to have returned the bond forfeited to authorize the obligee to maintain an action against the obligors for a failure to perform its condition. We have no statute which makes such a requirement in re-

spect to a bond like that declared on; and such a return, or the want of it, can avail nothing. To entitle the plaintiff to a *summary remedy* on a forthcoming bond, and perhaps in other cases, the statute directs that the bond shall be returned "forfeited." But if there was an omission thus to return it, we apprehend that the plaintiff would not be foreclosed of a remedy at common law.

It is·insisted that the plea which sets up the death of the slave as an excuse for the performance of the condition of the bond *pro tanto*, cannot be supported; that the decisions of this and other courts which maintain that if the chattel perish pending an action of *detinue*, and in analogous cases, the plaintiff's right to recover will not be affected, are opposed to such a defence. If a party is in default for not performing a duty, as for the non-delivery of a chattel, he cannot absolve himself from a liability which has already accrued, by proof that the thing has been lost, or destroyed by the act of God, without his fault; more especially, if before the happening of the event, an action has been instituted upon the liability. The principle upon which this rule rests is well supported both by reason and authority, though in some cases it may have been pressed too far. It supposes that if the right of action becomes perfect by the failure to deliver an article of personal property to the person entitled to it, the party in default shall not relieve himself from the consequences by proving that a delivery afterwards became impracticable by something occurring *post factum*, which the person entitled had no agency in producing.

In Burgess and Davis v. Sugg, 2 Stewt. & P. Rep. 341, which was an action on certain forthcoming bonds, the plea alledged that the slave for the delivery of which the obligors had stipulated, *died previous to the commencement of the suit.* The court said, " the right of action on the bond refers to, and accrued at the time of the forfeiture ; and if the death of the slave occurred subsequently thereto, it afforded no bar to the plaintiff's right of action, and was correctly ruled to be bad on demurrer." This remark of the court, if it can be regarded as settling any principle beyond the precise point then in judgment, rather intimates that if the slave had died before the bonds were forfeited and the liability fixed, the

obligors would have been relieved from a performance of their undertakings.

In the case at bar it cannot be inferred that the defendant in the suit in chancery was in default for not delivering the property seized by the sheriff, or that the order contemplated its delivery to the complainant, if the replevy bond had not been executed. The declaration alledges that the purpose of the bill was the foreclosure of a mortgage. We must then intend that the object of the order and consequent seizure was to secure the slaves, so that they should be forthcoming to answer the decree of foreclosure and sale. In this view the bond, so far as it respects the present case, was in legal effect nothing more than a forthcoming bond; the breach of which depended upon the decree in favor of the complainant. The question then is, did the death of the slave previous to a breach, relieve the obligors from a compliance with their engagement as it respects him. In Perry v. Hewlett, et al. 5 Porter's Rep. 318, which was an action upon a covenant by which the defendants undertook to pay the plaintiff the sum of $150 for the hire of two negroes, *and to return them on the twenty-fifth day of December, eighteen hundred and thirty-four*—This court said, "the defendants in this case were prevented by the death of the slave Fanny, without their default, from returning her according to their covenant, and they are entitled to a discharge from so much of their contract, as the act of God disabled them from performing."

So in Givhan v. Dailey's adm'r, 4 Ala. Rep. 336, it is said, "the principle has been repeatedly acknowledged, that if a party is disabled by an act of God, before breach of his contract, he shall be excused from the performance. Thus, if one man lend his horse to another, who promises to return him by a day certain, or on request, if the horse die before the day or request, without the borrower's fault, the re-delivery will be excused."

The party to whom the slaves were delivered by the sheriff upon the execution of the bond, may be regarded as a bailee and the obligors as stipulators, for their delivery upon the condition provided for; and the effect of the death of one of the slaves will thus far excuse a non-performance in the

same manner as if the case were an ordinary bailment, with or without hire. The cases cited are then, in principle analogous to the present, and show that the death of the slave John before the condition of the bond became absolute, thus far relieved the obligors from a performance of their obligation.

It is however contended for the defendant in error, that although the demurrer to the pleas should not have been sustained, yet as the defendant below might have proved the same fact which they set up under the other pleas, he has not been prejudiced by the judgment on demurrer; and therefore cannot complain of the decision against him. All the pleas were affirmative, and it devolved upon the defendant after the plaintiff had produced the bond and shown a breach, to sustain a defence by proof. Now, although it may be that the plea of performance would have tolerated the admission of all the facts alledged in the several pleas; yet we must intend under the circumstances of the case that the demurrer was sustained, because it was supposed that the pleas adjudged bad, did not present an available defence; and that the court would not have admitted evidence of the fact they alledge. Where a demurrer to a plea has been improperly sustained, if it appears that the defendant has had the benefit he could have derived from it, upon the trial of issues on other equivalent pleas, he cannot insist upon the error; as no real injury was done him. [See 4 Ala. Rep. 230; 8 Id. 161; 3 Id. 942.] It remains but to add, that the judgment is reversed and the cause remanded.