## FREEMAN *vs.* SCURLOCK ET AL.

[TROVER FOR CONVERSION OF SEVERAL SLAVES.]

1. *Instructions to jury, that they must find for defendant if they believe all the evidence.* The court is authorized to instruct the jury, that if they believe all the evidence they must find for the defendant, only in cases where a demurrer to the evidence, if interposed, might properly have been sustained; such a charge, therefore, should never be given, where there is any evidence which reasonably tends to establish the plaintiff's case.

2. *Conversion defined.*—To constitute a conversion, it is not necessary that the party should have had the exclusive control, or actual manucaption of the goods: the term embraces, in its legal import, any intermeddling with, or dominion over the property of another, subversive of the rights of the true owner; as, if the defendants are actually present, aiding and assisting another in the unlawful design of removing plaintiff's slaves from the State, with the intention of wrongfully depriving him of his property, even though it be for the use and benefit of his wife, each act, in furtherance of the common design, is the act of all, and all are guilty.

3. *Facts reasonably tending to show conversion.*—On a separation between plaintiff and his wife, and a division of their property had by consent, the slaves here sued for in trover were allotted to the wife, and afterwards went into the possession of her brother, against whom plaintiff brought detinue. The sheriff went with the process to the neighborhood in which the slaves were, but did not find them; and on the second or third night afterwards, the wife, in company with a minor brother, who is one of the defendants in this action, started with the slaves to Montgomery. They were met by the other defendant, with his wagon, at 11 o'clock that night, several miles from the place of starting, and proceeded in his wagon to Montgomery; traveling by an unusual route. At Montgomery, the wife and her brother, with the slaves, took passage on a boat, and proceeded to Texas, where she and the slaves remain; and the other defendant returned home. The bill of exceptions states, also, that there was evidence "tending to show that the defendant's wagon had been engaged without telling him the object, that neither of the defendants exercised control over the slaves, and that the brother went to Texas as the escort of his sister": *Held*, that the evidence reasonably tended to prove a conversion, and that the court therefore erred, in instructing the jury that, if they believed all the evidence, they must find for the defendants.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Holman Freeman, the appellant, against William L. Scurlock and Thomas Cliett, to re-

cover damages for the conversion of two slaves, Lucy and her infant child. As the substance of the evidence is embodied in the opinion of the court, it is unnecessary to state it in this place. The charge of the court, which is here assigned for error, was, " that if the jury believed all the evidence offered by the plaintiff, to show a conversion by the defendants, it was not sufficient to establish a conversion by both the defendants, or by either of them, and they must find for the defendants ; to which charge plaintiff excepted."

GEO. W. GUNN, for the appellant :

1. Any intermeddling with the personal goods of another, adverse to the rights of the owner, is a conversion.—1 Chitty's Pl. 154 ; Thorp v. Burling, 11 Johns. 285. So, where one assumes to exercise control or dominion over goods, in exclusion of the rights of the owner, even though there be no manual taking.—Abercrombie v. Bradford, 16 Ala. 568; Gray v. Crocheron, 8 Port. 191. Any use, or disposition of a chattel, without the assent of the owner, and inconsistent with his rights, is a conversion.—Hutchinson v. Bobo, 1 Bailey's R. 546; Reid v. Colcock, 1 Nott & McC. 594; Murray v. Burling, 10 Johns. 172; Parminter v. Kelly, 18 Ala. 716; 5 Conn. 323. If the defendants, with a knowledge that the slaves were about being taken off, in order to keep them from the plaintiff, aided and countenanced the act, or were present and in company for that purpose, they are guilty of a conversion. Nelson v. Iverson, 17 Ala. 222; Glaze v. McMillion, 7 Port. 281; Scott v. Perkins, 28 Maine, 22; Clark v. Whitaker, 19 Conn. 319; Ripley v. Dobbin, 6 Shep. 382; Hare v. Pearson, 4 Ired. 76; Maguyer v. Hawthorn, 2 Harrington's (Del.) R. 71; Connah v. Hale, 23 Wend. 462; Prescott v. Wright, 6 Mass. 20; Pierce v. Benjamin, 14 Pick. 356; Brown v. Brown, 13 Ala. 212; Lee v. Matthews, 10 ib. 682; Pool v. Adkisson, 1 Dana, 118.

2. The consent of plaintiff's wife cannot purge the act : trover lies, though the act was done by her order or direction. The wife is not, prima facie, the agent of the husband for the purpose of lending or otherwise disposing of his property ; nor has she authority to appoint an agent.—1 Russell on Crimes, 19; 2 ib. 155; People v. Schuyler, 6 Cowen, 572;

Prescott v. Wright, 6 Mass. 20; Benjamin v. Benjamin, 15 Conn. 347; Birdseye v. Flint, 3 Barb. 500.

3. The defendant Scurlock can claim no protection from his infancy, since an infant is liable in trover.—Vasse v. Smith, 6 Cranch, 226; 1 Chitty's Pleading, 76.

4. If there was any evidence of conversion, however slight, the charge of the court is erroneous, since the jury are the sole judges of the weight and sufficiency of the evidence ; and an examination of the evidence set out in the record, tested by the principles established by the authorities above cited, leads to the irresistible conclusion, that there was a settled determination on the part of these defendants, or of others with whom they united, to deprive plaintiff of his property.

CLOPTON & LIGON, *contra:*

1. Whether certain acts, when proven, amount to a conversion, is a question of law, to be determined by the court. 3 Stephens' N. P. 2704. The court, then, was authorized to charge the jury, there being no conflict in the testimony, that the facts proven did, or did not, amount to a conversion. Gray v. Crocheron, 8 Port. 191.

2. To maintain trover, two things must concur—property in the plaintiff, and a conversion by the defendant ; and this conversion may arise in four ways—viz., by a wrongful taking, by an illegal assumption of ownership, by an illegal use or misuse, and by a wrongful detention.—Glaze v. McMillion, 7 Port. 280. The evidence in this case shows neither of these, and consequently no conversion : there was no repudiation by the defendants, or either of them, of the plaintiff's right to the property, and no exercise of dominion over the property inconsistent with that right ; without which there is no conversion for which trover lies.—Heald v. Carey, 9 En. Law & Eq. R. 429.

3. The idea of property is of the essence of a conversion. It is an assertion of ownership by the defendant, either permanent or temporary. An interference with a chattel, under circumstances which show the owner's right to be undisputed, even with injurious consequences to the owner, does not amount to a conversion.—Nelson v. Whetmore, 1 Rich. Law R. 322. The defendants here, so far as the property was

concerned, were entirely passive; and when that is the case, there is no conversion.—Ragsdale v. Williams, 8 Ired. 498. The evidence will not authorize the inference, that the defendants intended to appropriate the property to their own use, or to the use of any other person, unless it be plaintiff's wife, in whose possession plaintiff himself had placed the property four years previously; or that any act was done by them, which had the effect of destroying or changing the quality of the chattel.—Glover v. Riddick, 11 Ired. 587; Fouldes v. Willoughby, 8 Mees. & W. 540.

4. To support trover, there must be proof of an actual or virtual possession in the defendants, otherwise they cannot be charged with a conversion.—Traylor v. Horrall, 4 Blackf. 317. In this case, the evidence shows neither an actual nor a virtual possession in either of the defendants.

5. Whilst infancy is no bar to an action of trover, it may yet have some influence in determining whether there is really a conversion.—Vasse v. Smith, 6 Cranch, 231. And the defendant Scurlock, being a minor, cannot be guilty of a constructive conversion.

6. The wife must be regarded, in the absence of the husband, as having a general authority to exercise the usual and ordinary control over his property, which must be possessed by some one: in the absence of rebutting testimony, her possession is that of her husband. The evidence here shows, that the negroes, at the time of the alleged conversion, were in the possession and under the control of plaintiff's wife, into whose possession he had previously permitted them to go; and the defendants committed no act inconsistent with this disposition of them.—Church v. Landers, 10 Wend. 79; Jones v. Jones, 3 Strobh. 316.

7. Considering the case in the strongest view against the defendants, they could not be guilty of a conversion, unless Mrs. Freeman, had she been other than the plaintiff's wife, was also guilty of a conversion. Considering her as a stranger to plaintiff, the negroes having been placed in her possession by him, she became his bailee, and cannot be charged with a conversion, unless she had done something with the property inconsistent with the object and design for which it was placed in her possession. That object was, for her use

Freeman v. Scurlock et al.

and support ; and the evidence does not show any use of the property inconsistent with that end. Again ; since her taking was not tortious, a demand and refusal were necessary to show a conversion, and, *a fortiori*, to authorize a recovery against defendants.—Glaze v. McMillion, 7 Port. 280 ; 3 Stephens' N. P. 2704.

CHILTON, C. J.—1. His Honor charged the jury, that the evidence was not sufficient to make out a conversion of the slaves, against either of the defendants. This charge can only be supported, in cases where, had the party in whose favor it was given demurred to the evidence, the judge might properly have sustained the demurrer. In such case, as the party demurring to the evidence is required to admit as a fact what the evidence tends reasonably to establish, so that the duty of trying the facts shall not be devolved upon the court, but merely the duty of declaring the law arising upon them, (Bryan v. The State, 26 Ala. R. 65,) it follows, that if there be any evidence which reasonably tends to show a conversion of the slaves by either of the defendants in the case before us, the charge cannot be supported. We say that such would be the case, where the evidence *reasonably tends* to prove a conversion ; for we are not prepared to hold, that where the testimony adduced is so light and inconclusive, that no rational, well-constructed mind can infer from it the existence of the fact which it is offered to establish, we should reverse the cause, should the judge instruct the jury to disregard it.—Clarke v. Marriott, 9 Gill, 331. It is not necessary, however, in view of the facts of this case, to decide this point.

The slave Lucy and her child were shown to belong to the plaintiff. The deed, executed upon the separation between him and his wife, attempting to vest in the wife the title to said slaves, was inoperative as respects the husband's legal rights, whatever might have been its effect in a court of equity. The plaintiff had sued in detinue the brother of his wife, to recover said slaves, and an order for their seizure by the sheriff had been obtained. The sheriff, with this process, had gone to the neighborhood from which they were taken, as will presently be stated, in search for them, only two days before

they were carried off. The slaves, with Mrs. Freeman and her two brothers, one of them the defendant in the detinue suit, and the other the defendant in this action, all left the premises of Mrs. Scurlock, where they had been for some time, in the night. Cliett, the other defendant, met them, with the wagon in which they went to Montgomery, three and a half miles from where they started, at eleven o'clock at night, and they all went to Montgomery together. They were, when Cliett met them, twenty-five miles from Montgomery, and traveled an unusual route,—were stopped that night by high water, and went on to Montgomery next day, where the defendant, Wm. Scurlock, and his sister, Mrs. Freeman, proceeded to Texas with the slaves by steamboat; and T. Scurlock and Cliett returned home. It appears that neither Mrs. Freeman, nor the slaves, have since returned to this State. It is stated in the bill of exceptions, that it was in evidence " that the party expected to be met, or interrupted, that night by the plaintiff, and that they had nothing to say out of the family about their determination to take the negroes off. There was evidence, also, tending to show that T. Scurlock had engaged Cliett's wagon, without telling him the object, and that neither Cliett nor Wm. Scurlock, who was a minor, exercised control over the slaves, and that the latter went to Texas as the escort of his sister."

Now, we desire to express no opinion upon the facts of this case. It is the province of the jury to try the facts. But the question, whether there was evidence reasonably tending to establish a conversion, is necessarily involved in our decision of the cause. If there was, it was not competent for the judge to withdraw it from the jury, who alone were the judges of its sufficiency.—Sims v. Glazener, 14 Ala. R. 695; Nelson v. Iverson, 19 Ala. R. 95.

2. That the proof *tended* to establish a conversion, on the part of both the defendants, we do not entertain a doubt. What is a conversion? It is not confined to the unlawful turning, or applying of the personal goods of another, to the use of the taker. Nor is it necessary to constitute a conversion that the party should have had the exclusive control or dominion over the goods, or the actual manucaption of them. The term has a more enlarged legal import, and embraces

any intermeddling with, or dominion over such property, subversive of the dominion of the true owner, or of the nature of the bailment, if it be bailed. If one person assist another in taking and removing the goods of another, and placing them without the owner's control, or beyond his power to obtain them, with intent to appropriate them to his own or another's use, and does it under such circumstances as afford reasonable notice that such removal is unlawful, and in derogation of the rights and subversive of the dominion of the true owner, they are both equally guilty. A forcible illustration of this principle is afforded by the case of Thorp v. Burling, 11 Johns. R. 285. See, also, 1 Nott & McCord, 592; 1 Har. & Johns. 519; 7 Johns. R. 254; 10 *ib.* 172; 14 *ib.* 128.

It was for the jury to determine whether the parties were not participating in and forwarding a common design to get the property out of the country, and to deprive the true owner of it. If there was no such design, or the defendants acted under such circumstances as to afford them no reasonable notice of it if it existed, they would not be liable, any more than the boat that, in the best of faith, may have taken them down the river.—8 Excheq. R. 540. But then the jury had the right to look to the circumstances. Why start off in the night, when the sheriff was known to be hunting for the slaves? Why does Cliett meet them at eleven o'clock at night,—an unusual time for a female to set out upon a journey? Did he engage to do this without a knowledge of the emergency?—without making inquiry as to why they did not go in the day time? He finds them on the road three and a half miles from where they live, at this late hour, going to Montgomery with these slaves. Would such a circumstance excite no suspicion of wrong? Would not an honest, prudent man very naturally suppose that the parties were absconding with these slaves? Without answering these queries, it is enough that they naturally arose from the evidence, and were improperly excluded from the jury.

If the defendants united with Theodosius Scurlock in the unlawful design of removing the slaves, and actually carried out that design, by going with them to Montgomery, that they might be taken on to Texas for the benefit of Mrs. Freeman, they are guilty of a conversion, and no demand is necessary.

It matters not which of them told the slaves to get in or out of the wagon which conveyed them, or appeared to exercise the control. Being actually present, aiding and assisting, with the intention of wrongfully depriving the owner of his property, each act, in furtherance of the common design, is the act of all, and all are liable.

As this is the only question presented by the charge, we deem it unnecessary to go further and notice others made in the argument.

Let the judgment be reversed, and the cause be remanded.