# HENDERSON *vs.* RENFRO.

[FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS.]

1. *Administrator's liability for hire of slaves.*—An administrator is not charge-able, on settlement of his accounts, with the full value of the hire of a slave belonging to his intestate's estate, whom, on account of his ill health, he did not hire out, when it is shown that he acted under the advice of a physician ; nor with the hire of other slaves for a small portion of the year, when it is shown that he made unsuccessful efforts to hire them out for that time, and that they were employed during the time in repairing the fences &c. on the plantation, which it was his duty to rent out ; nor with any loss which may ensue from the private hiring of slaves, (Code, § 1751,) unless he is shown to have acted in bad faith.

2. *Presumption in favor of judgment.*—The rule is well settled, that all reasonable presumptions will be indulged in favor of the judgment of the primary court, and that error must be affirmatively shown.

3. *Costs of contested items of account.*—The costs of the attendance of a witness, summoned to testify in relation to a contested item with which the admin-istrator is sought to be charged under section 1824 of the Code, are within the enlightened discretion of the primary court, although he is also sum-moned to testify in relation to another contested item of credit (§ 1814) which is reduced.

APPEAL from the Probate Court of Talladega.

IN the matter of the estate of Edward Henry, deceased, on final settlement of the accounts of Thomas P. Renfro, sheriff, and, *ex officio*, administrator *de bonis non*, with the will annexed, of said decedent. All the assignments of error relate to the rulings of the primary court on the allowance of several items of the administrator's accounts, which were contested by John Henderson, the succeeding administrator, and which may be thus stated :

Henderson moved the court to charge said Renfro with the hire of certain slaves belonging to the estate, with which he had failed to charge himself; to-wit, with the hire of a boy named Jack, for the year 1855, and with the hires of Wash, Manuel, Ann, and Betsey, from the 1st January to the 5th February, 1855. In support of this motion, L. R. Lawler and George Elrod were examined

as witnesses, whose testimony was as follows : "Lawler proved, that he lived in the year 1855 on a place belonging to said decedent, with one James W. Simmons, who had rented said place for the year; that he assisted in making a crop on said place; that the slaves above-named were brought on said place early in the month of January, and remained there until some time early in February; that they were engaged all the time in repairing the houses and fences on said place, making a garden, &c.; that Jack remained with Simmons during that year, and witness worked with him on the place; that said boy was a constant hand on the farm during the year, except some two or three fractions of days, but, in consequence of a sore on his ancle, he usually worked with a hoe, or did some other light work, and did not plow any; that said boy's services for that year were reasonably worth $50; that the hire of Wash and Manuel, for said month of January, was worth from $6 to $8 per month, and for the other five days in proportion; that Ann's hire for said month was worth from $4 to $6, and the girl Betty's from $3 to $4. Elrod proved, that he was acquainted with said slaves, and had been in the habit of hiring them before that year as the agent of the former administrator; that he had hired out the boy Jack, for the year 1854, for $150, and had been offered, by private contract, $300 for the boy Jack and another boy belonging to the estate, for the year 1855; that he notified said Renfro of this offer, who refused to take it, or to hire them privately, and said that he was going to hire them at public outcry; that the hire of Jack for the year 1855, in his then condition, was worth at least $100; that the hire of Wash and Manuel, for said month of January, was worth from $10 to $12, and in the same proportion for the five days in February; that Ann's hire for the same time was worth from $6 to $8 per month, and Betsey's from $4 to $5 per month. To all the evidence of said Lawler and Elrod Renfro excepted."

"Said Renfro then introduced said James W. Simmons as a witness, who had had possession of said slaves as above shown. Henderson objected to the competency of

Simmons as a witness, on the ground of interest, and asked for what purpose he was introduced. It was thereupon stated, that he was introduced for the purpose of showing that Renfro had requested his aid in hiring out said slaves in the early part of the year 1855, until he could advertise and hire them out publicly; that witness did so, but could not find any one who wished to hire for that length of time; that Renfro afterwards told him that he could not hire out said slaves until he could advertise and hire them publicly, and that he would have to charge the estate for their board if he kept them until that time; that he (Renfro) learned that the farm was in a bad condition to rent, and if witness would take said slaves, and relieve the estate from the expense of their board until the day of hiring, and repair said place, and put it in a condition to rent, (which witness did,) that he should be allowed such compensation for his services in repairing said farm and houses as the probate court would allow him. Henderson then objected to said witness, on the ground that he was interested, and to the testimony proposed to be given, as illegal and irrelevant; but the court overruled the objections, and said Henderson excepted; and the witness then testified, in substance, as above stated."

"Said Renfro then read in evidence the deposition of Dr. J. W. Watkins," who testified, in substance, that in the early part of the year 1855, at the request of said Renfro, he examined the boy Jack, and prescribed for him; that the boy was afflicted with a diseased leg, ulcerated about the ancle-joint; that the ulcers were of a chronic character, proceeding from some disease of the contiguous bones, and did not yield readily to medical treatment; that the limb might be used without pain, but "required absolute rest to be cured"; that it would have been very imprudent to hire out said boy while in that condition, or to bind him to constant labor, and would probably have endangered his diseased limb, if not his life; and that he gave Renfro a written statement of his opinion on the case. Renfro then introduced a practicing attorney as a witness, who testified that, in the early part

of the year 1855, Renfro showed him a certificate from Dr. Watkins, relative to the health and condition of the boy Jack, and asked his advice about hiring the boy ; and that he advised Renfro, after reading the certificate, not to hire out the boy, as he might be held liable to the estate in the event of his loss. "There was no evidence going to show that Simmons was required to pay hire for Jack, or whether he was to make him work or not. This was all the evidence, on both sides, with regard to said motion ; and thereupon the court charged said Renfro $50 for the hire of the boy Jack, but refused to charge him more, and also refused to charge him with any amount for the hire of said other slaves; to which rulings of the court said Henderson excepted."

The first item of the administrator's accounts, to which said Henderson objected, was voucher No. 1, an account in favor of James W. Simmons amounting to $279 50, principally for work done in repairing the houses and plantation of the estate. On the evidence adduced relative to this item, the court reduced the amount to $217 75 ; and to the allowance of this sum, as a credit to the administrator, said Henderson excepted.

The other items of credit to which objections were made, were for three witness-certificates paid by Renfro, amounting to $12 50. In relation to these items of the account, "it was admitted that said witnesses were subpœnaed on the part of said Renfro, for the purpose of being examined as witnesses with regard to voucher No. 1 on this settlement, and to rebut the motion of said Henderson to charge said Renfro with the hire of said boy Jack, and for the purpose of sustaining said voucher as a credit; and that said voucher was reduced by the court $61 75." This was all the evidence with regard to said vouchers ; and thereupon the court allowed said Renfro a credit for each one of said vouchers, and said Henderson excepted.

HENDERSON & McGEE, for appellant.

JAMES B. MARTIN, contra.

STONE, J.—We do not think this record discloses any error available to the appellant.

Under the testimony of Dr. Watkins, we think it extremely doubtful if the boy Jack should have been permitted to do any labor during the year 1855. After the opinion of the physician was obtained, it would have been highly improper to hire him out, irrespective of his health. If he had been so let to hire, and injury to him had been the consequence, we will not say the administrator would have rendered himself liable. Administrators must be clothed with some discretion in the management of the property of the estate committed to their charge; and if they employ the same skill and care as an ordinarily prudent man would employ in reference to his own property, they should not be held accountable. The testimony of the witnesses who had the best opportunity of knowing the facts, did not place the value of Jack's services above the sum fixed by the probate court; and that court did not err in this particular.

As to the hire of the slaves during the month of January, and up to the first Monday in February, 1855, the record does not disclose enough to show that the administrator should have been charged for it. There was in this estate a will. What its provisions are, we do not know. Neither does it appear from this record that the estate was in a condition to be settled up, even if the will was silent on the question. From anything that appears, it may have been the duty of the administrator to rent out the land during that year; and we think the law requires us to presume, in favor of the ruling of the primary court, that such was his duty. The proof shows the real estate was greatly in need of repairs; and we do not doubt the authority of the administrator, whenever it is his duty to rent out land, to put upon it such reasonable repairs as are necessary to make it command fair rent. See Pinkard v. Pinkard, 24 Ala. 250; Gerald v. Bunkley, 17 Ala. 170; 2 Story's Equity, § 1269. In this case, there is no proof that the administrator could have hired out the slaves for the short period which would elapse before the day of public hiring; but, on the contrary, the

proof tends to show that he made efforts to do so, and did not find a hirer. Under these circumstances, we think he deserves commendation for employing the slaves in repairing the plantation, and thus relieving the estate of the expense of their board.

It may be contended on the other side, that inasmuch as the administrator obtained an allowance for repairs put on the plantation by Simmons, and inasmuch as part of those repairs were put there by the slaves of the estate, the administrator should have been charged for their hire. The record does not inform us that any allowance was made for the labor 'performed by these slaves. On the other hand, it does appear that the account for repairs was materially reduced. We think we would do no violence to the established facts in this record, by presuming that this reduction was made on account of the labor of the slaves of the estate. At all events, we do not feel at liberty to presume that any of said allowance was for labor performed by them. If such was the fact, it should have been expressed in the record. The rule is too well established to be further a subject of debate, that this court will indulge all reasonable presumptions which the record will allow, in favor of the ruling of the court below. Error will not be presumed, but must be affirmatively shown.—School Commissioners v. Godwin, and authorities cited, 30 Ala. 242.

Under our statute, the administrator is authorized to hire out the slaves either publicly or privately.—Code, § 1751. This section leaves it optional with him which course he will pursue. Having himself the option, of course he will not be accountable for loss that may result, unless it be shown he acted in bad faith.

The principles above stated dispose of the first and second assignments of error. The third assignment presents more difficulty. The item, voucher No. 1, charged by the administrator, was reduced. In such case, the Code (§ 1814) declares, that the costs of the contest must be paid by the administrator. James Martin, David Martin, and Alex. Hill, were witnesses in reference to that voucher; and the third assignment of error questions

the propriety of the decision of the probate court, which allowed to the administrator a credit for the fees of those witnesses. If the question rested alone on these propositions, we should unhesitatingly declare that the probate court erred in this allowance. But the question is not thus simple. The bill of exceptions recites, that these witnesses were all summoned on the part of said Renfro for the purpose of being examined as witnesses with regard to voucher No. 1, "and as witnesses to rebut the motion of said Henderson to charge the said Renfro with the hire of said negro Jack." The motion to charge Renfro with the hire of the slave Jack, was made under section 1824 of the Code; and the Code gives no special direction as to costs on a motion made under this section. The costs in such case must be held to be within the enlightened discretion of the probate court. Now, these witnesses were summoned for two objects. If the expenses of their attendance be divisible, so far as they were witnesses for one object the administrator was liable for the expense; and as to the other object, the expense was within the discretion of the court. The statute has made no provision for such a case as this; and we know of no rule of law which will allow us to travel beyond the statute, and divide the costs. Even if we were to undertake such division, no rule has been furnished to us, nor can we conceive of any, which would enable us to adjust the proportions. In such case, we think it must be left to the decision of the primary court, before whom the trial takes place. If he tax the administrator with the costs, as properly pertaining to the contested item, which he reduces; or, if he charge the costs against the estate, as pertaining to the effort to charge the administrator under section 1824,—in either case, we think his judgment is free from any error which can be taken advantage of in this court.

The judgment of the probate court is affirmed.

WALKER, J., not sitting.