# RAND vs. OXFORD.

[TROVER BY VENDOR AGAINST PURCHASER OF SLAVE.]

1. *Rights, duties and liabilities of purchaser on rescission of contract.*—On the refusal of the vendor to receive a slave, when tendered back by the purchaser, in a case which authorizes a rescission of the contract on the part of the latter, the purchaser is not bound to abandon the slave, but may retain it as the bailee of the vendor ; and the fact that he permits the slave, while thus remaining in his possession, to work voluntarily for him, does not render him liable in trover at the suit of the vendor.

APPEAL from the Circuit Court of Wilcox.

Tried before the Hon. NAT. COOK.

THIS action was brought by A. B. Oxford, against W. R. Rand, to recover damages for the conversion of a slave named Sarah. The only plea was the general issue. On the trial, as the bill of exceptions shows, the plaintiff proved, that he sold the slave in controversy to the defendant, in January, 1854, at the price of $999, and executed to him a bill of sale, containing warranties of soundness and title ; that the slave was unsound at the time of the sale, and, in consequence thereof, the defendant tendered her back in rescission of the contract ; that the plaintiff refused to receive the slave, when thus tendered back to him, and soon afterwards brought suit against the defendant on the note given for the purchase-money ; that the defendant defended the action, " on the ground that there had been a breach of said warranty, and a rescission of said contract by the said tender" ; that the jury found the issue joined on this defense in favor of the defendant, and judgment was thereupon rendered in his favor ; that the plaintiff shortly afterwards demanded the slave of the defendant, who gave her up to him. " The evidence tended to show, also, that before the said tender, the defendant worked said slave, and tried to make her work in his plantation up to the time of the tender ; that after the said tender and refusal, the defend-

Rand v. Oxford.

ant carried the slave back to his plantation, and put her in the possession of his overseer, with his other slaves, and told the overseer to let her work or not, just as she pleased ; that the overseer obeyed this order, and that the slave worked in the plantation, with the other slaves, up to the time of her delivery to the plaintiff, doing, however, but very little work—about equal to a half hand. The plaintiff also proved the value of the slave's hire, from the time of the sale to the time when he received her back as aforesaid."

" This being all the evidence, the court charged the jury, 'that if they believed from the evidence, that after the tender by the defendant, and before the delivery to the plaintiff, the slave worked in the defendant's plantation, and that her labor was of any value, over and above the expense of keeping her, then the plaintiff was entitled to recover, in this action, what was equitable and just'; also, 'that if the plaintiff was entitled to recover, under the law as above laid down, he might recover as damages the hire of the slave from the time of the sale up to the time when he received her back.' The defendant excepted to each of these charges, and then requested the court to instruct the jury, 'that if they believed from the evidence that the defendant, after the tender of the slave to the plaintiff, placed her back again on his plantation, and told his overseer to let her work or not just as she pleased, and that the overseer did so, and the slave then worked in this way up to the time when she was delivered to the plaintiff, then the plaintiff could not recover'; also, 'that if they found for the plaintiff, they could not, in assessing his damages, give him by way of damages the hire of the slave from the time of the sale to the tender.' These charges the court refused to give, and to the refusal of each the defendant excepted."

The errors now assigned are, the charges given, and the refusal of the charges asked.

D. W. BAINE, for the appellant.

ALEX. WHITE, contra.

R. W. WALKER, J.—The case seems to have been treated in the court below, (and it has been so argued here,) as if the contract was in fact rescinded by Rand's offer to return, and Oxford's refusal to receive the slave. Without inquiring or deciding whether such a result is effected, when the tender which is rejected by the seller is based upon a mere breach of warranty, unmixed with fraud, we will consider the case in the aspect in which it has been presented to us.

When the purchaser of a chattel, for a sufficient reason, makes a tender of the property to the seller, with a view to rescission, and the seller refuses to receive it, the purchaser may abandon the property, but he is not bound to do so. He may, if he choose, retain the possession; and in that event, he is considered merely the bailee of the seller, and that relation becomes at once the rule and measure of his rights and responsibilities.—Dill v. Camp, 22 Ala. 249; Des Arts v. Leggett, 2 Smith's (N. Y.) R. 582; Bennett v. Fail, 26 Ala. 610.

It would be the establishment of a hard rule, to hold that, in order to enable the purchaser to insist that the contract and his liability on it are at an end, he must, in case the vendor refuses to accept the property when tendered, actually abandon the possession. That, in many cases, would expose the property to waste and destruction; and if the purchaser should happen to make an insufficient tender, or if he should be unable to prove the facts which justified the rescission, he would still remain liable on the contract, while the property might be lost or destroyed. But a purchaser, who, after the vendor's refusal to accept the property, elects to retain the possession, must not use or employ the property in any manner inconsistent with the vendor's rights, or with the nature of the bailment which in such cases arises by implication of law.—Authorities supra. The bailment thus created would seem to belong to the class denominated in the books depositum.—See Farrow v. Bragg, 30 Ala. 268. In reference to depositaries, it is said—and this is obviously true—that the extent to which they are authorized to use the property depends materially on its nature. If the

subject-matter of the bailment be a living animal, such as a hound or a horse, which requires air and exercise, the bailee has an implied authority from the owner to use it to a reasonable extent, and is under an implied engagement to give it proper air and exercise. In like manner, the bailee may milk a cow left in his possession, or use the books of a friend deposited in his library.—Addison on Contr. 527; Edwards on Bailments, 89; Story on Bailments, §§ 89–90.

Now we must be presumed to know that moderate labor is not only promotive of the health of a slave, but essential to the preservation of that wholesome discipline, on which his value so materially depends. It is impossible to conceive that, in a case like the one we are considering, the bailee exceeds his authority, if he barely permits the slave to work when he chooses, and accepts the benefit of his occasional and unforced labor. The ruling of the court below involves the proposition, that the bailee is guilty of a conversion unless he compels the slave to be idle. What is a conversion? This court has answered this question, by deciding that, to constitute it, "there must be a destruction of the plaintiff's property, or some unlawful interference with his use, enjoyment, or dominion over it, or an appropriation of it by the defendant to his own use, in disregard or defiance of the owner's rights." Conner & Johnson v. Allen, at the last term. In another case, it was defined as "any intermeddling with, or dominion over the property, subversive of the dominion of the true owner, or of the nature of the bailment, if it be bailed."—Freeman v. Scurlock, 27 Ala. 413.

When, on Oxford's refusal to receive the slave, Rand carried her back to his plantation, and allowed her to work at her pleasure with his other hands, this was not an unlawful interference with the dominion of the owner, nor inconsistent with the nature of the bailment; and it cannot, therefore, be deemed a conversion.—Kennett v. Robinson, 2 J. J. Marsh. 84; Conner & Johnson v. Allen, at last term; Fouldes v. Willoughby, 8 M. & W. 549; Hoover v. Alexander, 1 Bailey, 510.

It will be observed, that we have confined our inquiries

to the question, whether the facts supposed would establish a conversion, and a' consequent liability in trover. It may often happen, that the value of the use which such a bailee would be authorized to make of the property, without being guilty of a conversion, would exceed the expenses incident to the custody of the property. Whether in such a case the bailee would be liable in any form of action to the owner for this excess, is a question which we have not decided, and on which we intimate no opinion. See Edwards on Bailments, 89–90 ; Addison on Contr. 530.

The rulings of the court below were in conflict with the views we have expressed.

The judgment is reversed, and the cause remanded.