## GLOVER vs. TAYLOR & CO.

[ACTION FOR BREACH OF WARRANTY OF SOUNDNESS OF SLAVE.]

1. *Judicial notice of abolition of slavery.*—The courts are bound to take judicial notice of the fact, that slavery ceased to exist in Alabama prior to the spring of 1866.

2. *Replevin bond for delivery of slaves taken under attachment; excuse for non-performance.*—The condition of a replevin bond, executed in 1859, for the forthcoming of slaves taken under attachment, having be come, by the abolition of slavery before forfeiture, both illegal and impossible of performance, the surety is discharged from all liability.

3. *Competency of discharged surety as witness for principal.*—The surety on a replevin bond for the delivery of slaves, having been discharged from liability on the bond by the abolition of slavery before forfeiture, is a competent witness for his principal.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. F. BUGBEE.

THIS action was brought by William Taylor & Co., against Robert D. Glover, to recover damages for the breach of a warranty of the soundness of a slave ; and was commenced by original attachment, which was sued out on the 21st November, 1859. The attachment was levied by the sheriff, on the 23d November, 1859, on two slaves as the property of the defendant, which were replevied by him on the same day. The condition of the replevin bond recited the issue and levy of the attachment, and that the slaves attached had been returned to the defendant on the execution

of the bond, and then proceeded thus: "Now, if the said Robert D. Glover shall fail in the said action, he or his sureties shall or will return the said described negroes, Elijah and Albert, the specific property attached, within thirty days after judgment rendered in said cause, then this obligation to be void," &c.

On the trial, at the May term, 1866, as the bill of exceptions states, the defendant, by his attorney, (not being personally present,) offered one Powell as a witness, who was one of the sureties on the replevin bond. The plaintiffs objected to the competency of said Powell as a witness, "on the ground that he was interested in the event of the suit," and read the bond in evidence in support of their objection. The court sustained the objection, and excluded the witness; to which the defendant excepted. The defendant then proposed, in order to restore the competency of said Powell as a witness—1st, "to indemnify him against all loss or damage he might sustain by reason of his having signed said bond"; 2d, "to give said Powell a power of attorney to the clerk of the court, executed by parties amply solvent, authorizing said clerk to confess judgment in his favor, and against them, for whatever sum might be recovered by the plaintiffs in this suit, including the costs"; and, 3d, "to give to the plaintiffs a like power of attorney, executed by parties amply solvent, authorizing a confession of judgment in their favor, for whatever sum they might recover in this suit, including costs." The court rejected each of these proposals, as made separately, and refused to allow said Powell to testify as a witness; to each of which rulings and decisions exceptions were reserved by the defendant. The rejection of Powell as a witness, under the circumstances stated, is the only matter now assigned as error.

WATTS & TROY, for the appellant.—1. Powell was a competent witness for the defendant, without any release or indemnity; because the condition of the bond had become impossible of performance, by the destruction of property in slaves. The courts will take judicial notice of the abolition of slavery, and of the time when it occurred; and

whether it is to be regarded as the act of God, or of the legislature, or of the public enemy, or the *vis major* of political events, the effect is the same, and the non-performance of the contract is excused.—2 Parsons on Contracts, 184; *Falls v. Weisinger*, 11 Ala. 804.

2. There is a broad distinction between this case and the principle which applies in the action of detinue. In that action, if the plaintiff recovers, the previous death or destruction of the property does not discharge the defendant and his sureties from liability, but they are required to pay the value of the property.—Code, § 2470. The reason and justice of this statutory rule are found in this fact, that the judgment for the plaintiff, in that action, conclusively establishes that the defendant was a wrong-doer, and he can not be allowed to take advantage of his own wrong ; whereas, in this case, there is no wrong done, and no breach or forfeiture of the contract, before the intervention of the irresistible act which makes performance impossible and illegal.

3. If Powell was incompetent, the court erred in refusing the defendant's several offers to restore his competency. *Webb v. Kelly*, 37 Ala. 333 ; *Drinkwater v. Holliday*, 11 Ala. 134 ; *Taylor v. Br. Bank at Huntsville*, 14 Ala. 633 ; *Bainbridge v. Hill*, 13 John. 125 ; 17 Wendell, 18 ; 7 Cowen, 358 ; 2 Smith's Leading Cases, 156.

RICE, SEMPLE & GOLDTHWAITE, *contra.*—1. The surety on a replevin bond is not a competent witness for his principal. Code, §§ 2536, 2538. The incompetency of such a witness can only be removed in the mode pointed out and prescribed by the statute. —Code, § 2286. If his competency could be restored by the substitution of a new bond, none of the offers made in this case came up to the requirements of the law.—*Gullet v. Lewis*, 3 Stew. 23 ; *Kirk v. Glover*, 5 Stew. & P. 359 ; *Lockhart r. Wyatt*, 10 Ala. 231 ; *Johnson v. Cunningham*, 1 Ala. 249 ; *Holker v. Parker*, 7 Cranch, 436 ; *Harper v. Scott*, 12 Georgia, 125 ; *Bailey v. Bailey*, 1 Bing. 91.

2. Where property, levied on under execution, is restored to the defendant on the execution of a forthcoming bond ; and the same dies, or is destroyed, before the day for the

delivery thereof, without fault on his part," the obligors are not thereby discharged from liability, but are required to tender to the plaintiff the value of the property so lost or destroyed.—Code, § 2470. The same provision is extended, by section 2539, to replevin bonds in attachment cases. There is no good reason for making a distinction between the two kinds of bonds, even if the statute were silent. The obligors voluntarily assumed all risks to the property, and deprived the plaintiff of the opportunity of having the negroes sold under an order of court. The maxim applies to them, *Volenti non fit injuria*. In the analogous case of hiring, it has been decided by this court, that the loss of the slave's services, by any accident or event over which the plaintiff had no control, does not discharge or diminish the liability of the hirer.—*Bell v. Pharr*, 7 Ala. 807–13 ; *White v. Ross*, 5 Stew. & P. 133 ; *Bettis v. Taylor*, 8 Porter, 564, 575 ; *Jemison v. Cozens*, 13 Ala. 6 36 ; *Leslie v. Langham's Executors*, at the last term. The case last cited seems decisive of this ; the same defense here set up being there relied on, and held inoperative.

3. There is a recognized distinction, in the application of the rule as to the effect to be attributed to the act of God, or inevitable events beyond the control of the parties, between a public duty or obligation imposed by law, and a private duty or obligation voluntarily assumed by contract. To excuse non-performance in the latter class of cases, "such a state of circumstances must be shown to exist, as that the contract is no longer capable of being performed, without a criminal compromise of public duty."—*Atkinson v. Ritchie*, 10 East, 530 ; *Tonteng v. Hubbard*, 3 Bos. & P. 291 ; *Hadley v. Clarke*, 8 Term, 260 ; 4 C. & P. 295 ; 1 H. Bla. 65 ; 1 Ld. Raymond, 321 ; 3 M. & S. 270 ; *Clancy v. Overman*, 1 Dev. & Bat. Law, 402. The condition of a replevin bond is in the alternative—either to deliver the property, or to pay the judgment.—Code, §§ 2536–39, 2470 ; *Nave v. Berry*, 22 Ala. 382. If one of these alternatives has become impossible, or illegal, the obligor is bound to perform the other.—Salkeld, 170, pl. 2 ; 1 Abbott's National Digest, 543, §§ 105, 106 ; *Atkinson v. Ritchie*, 10 East, 530–36 ; 3 Bos. & P. 300 ; *Dermot v. Jones*, 2 Wallace, 1 ; 3 Dutch-

er's (N. J.) R. 513; 25 Conn. 530. The civil law is the same as to alternative obligations.—Pothier on Obligations, §§ 245-6, 250-51, 621.

4. But, even admitting that the replevin bond is simply conditioned for the delivery of the slaves, and that the abolition of slavery excuses the performance of the condition, (in cases to which the doctrine applies,) and that the court will take judicial notice of the time when slavery was abolished in Alabama; still, the record does not show error in the exclusion of the witness. Error must be affirmatively shown, and can not be presumed; and the defendant, in order to bring himself within the principle here invoked in his behalf, ought to have shown that the slaves specified in the bond were in life, and in slavery, at the time slavery was abolished here; otherwise, he does not bring himself within the rule asserted. Suppose the slaves had died in his possession, before the abolition of slavery, or had been manumitted by him, or had escaped to a country where slavery did not exist; the subsequent destruction of slavery here would not discharge the liability of the sureties on the bond. As the defendant had the possession of the slaves under the bond, the *onus* as to these points was on him, in order to show an excuse for his failure to deliver. 1 Greenl. Ev. §§ 74, 77, 79; *Grier v. Campbell*, 21 Ala. 327; *Walker v. Palmer*, 24 Ala. 356; *Carroll v. Malone*, 28 Ala. 521; *Blackburns v. Crawford*, 3 Wallace, 176, 195.

A. J. WALKER, C. J.—The surety on a replevin bond, in an attachment suit, was excluded as a witness on the trial of the cause, upon the ground of interest. The bond, which was for the delivery of slaves, was executed in 1859; and the trial was had in 1866. At the time of the execution of the bond, the negroes, which the defendant and his surety contracted to deliver, were slaves. We judicially know, that before the trial, the bond being unforfeited, slavery ceased to exist in the State of Alabama, and that a compliance with the bond had become, by the law of the land, alike impossible and illegal. This being the case, we decide, that the non-performance of the covenants of the bond became legally excusable, and that the surety could

not be liable for a failure to deliver the property, and was, therefore, not incompetent from interest.

Upon the question, whether the death, before forfeiture, of property included in a replevin bond, without fault on the part of the parties, would excuse the non-delivery, the decisions of this court seem conclusive.  In *Burgess v. Sugg*, (2 Stew. & P. 341,) a plea to a declaration on delivery bonds was held bad, because it only averred the death of the slaves levied on before suit, and did not show that the death occurred before forfeiture ; the court expressing no opinion as to the effect of the death before the day specified in the bonds.  Next, the case of *Perry v. Hewlett*, (5 Porter, 318,) presenting an analogous question, arose.  The question was, whether the hirer of a slave, who had covenanted to return it at the expiration of the term, was excused for non-compliance by the death of the slave.  The question was decided in the affirmative, upon a full examination of authorities.

In the case of *Morrow v. Campbell*, (7 Porter, 41,) a failure to deliver a deed was attempted to be excused, upon the ground of its loss.  The court, in holding the excuse insufficient, said : " To excuse the performance of an express covenant, it must be shown, either that it is prohibited by law, or that its performance has become impossible, by the intervention of causes which human agency could not prevent.  To illustrate the latter excuse : If one rents a house, which he stipulates to repair ; if it be destroyed by lightning, he shall notwithstanding rebuild it, because this is possible.  But, if one rent land, and covenant to re-deliver it to the landlord, in as good condition as when he received it ; yet, if the timber is prostrated by a tempest, he shall not be held to a performance, because the injury was a result beyond human prevention, and reparation impracticable."

The decision in *Givhan v. Dailey*, (4 Ala. 336,) holding that death excuses the non-performance of a contract of service for one year, seems to recognize the principle, "that if a party is disabled by an act of God, before breach of his contract, he shall be excused from the performance." For illustration, the court puts this example : " If one man

lend his horse to another, who promises to return him by a day certain; if the horse die before the day, without the borrower's fault, the re-delivery will be excused."

In the case of *Falls v. Weisinger,* (11 Ala. 801,) a bond was executed for the delivery of property seized by virtue of process issued from the chancery court. All the property, except one slave, was delivered as required by the decree, and that slave died before the decree was rendered. The question thus arose directly, whether the death of the slave, without fault, and before forfeiture, excused the failure to deliver according to the condition of the bond. The question was decided in the affirmative. The conclusion of the argument upon the point is as follows: "The party to whom the slaves were delivered by the sheriff upon the execution of the bond, may be regarded as a bailee, and the obligors as stipulators for their delivery upon the condition provided for; and the effect of the death of the slaves will thus far excuse a non-performance, in the same manner as if the case were an ordinary bailment with or without hire."

Addison, in his work on Contracts, states the doctrine of the inexcusableness of non-performance of contracts very strongly (pp. 1123, 1130); yet he says: "This rule of law is subject to certain qualifications, for we have seen, that if a person receives a bag of money, or a specific chattel, upon a contract to deliver it to any particular party, or at any particular place, a loss by robbery with irresistible violence is an excuse for non-performance of the contract to deliver." Another writer on contracts says: "If the performance of a contract becomes impossible by the act of God—that is, by a cause which could not possibly be attributable to a promisor—and this impossibility was not among the probable contingencies which a prudent man should have foreseen and provided for, it should seem that this would be a sufficient defense." The same author says, that illegality of performance, arising after the contract, is an "impossibility by act of law; and it is put on the same footing as an impossibility by act of God, because it would be absurd for the law to punish a man for not doing, or in

other words require him to do, that which it forbids his doing."—2 Parsons on Contracts, 672–674.

In this case, we have a bond for the delivery of property, which was held under a bailment, as defined in our own decision of *Falls v. Weisinger, supra.* The delivery of this property is impossible, because emancipation has destroyed the quality of property in the subjects of the bailment, and illegal, because to deliver would violate the law; and this is the result of the *vis major* of political events, which no human sagacity could anticipate. In holding that the performance of such a contract is excused, we are within the principle announced by the decisions and authors which we have quoted. We are not called upon, and therefore do not attempt, to harmonize them, or to determine whether some may not go too far in one direction, and some too far in the other.

By the Code, (§§ 2470, 2539,) a special provision is made for the case of the death of replevied property; but this regulation does not extend to the cases of the destruction of property by emancipation. The cases which we have collated show that, at common law, as understood in this State, and declared by decisions which we should not disregard, a destruction of property by death, or by the law, without fault, would excuse its non-delivery. The provisions of the Code to which we refer, may be regarded as an exception from the general principle of the cases where death intervenes. The inclusion within the exception of the single case, is an exclusion of others. "*Inclusio unius est exclusio alterius.*"

There is no room for an application of the doctrine, frequently asserted, but sometimes questioned, that a statutory revision of an entire legal subject is a repeal of the pre-existing law. There has not been by the Code a revision of the pre-existing law on the subject of excuses for the non-delivery of replevied property. So far from being a revision of the entire subject, the Code singles out one branch of the general subject, for special regulation, and thus opens the door for an application of the maxim, which we have quoted above.

The contract of a replevin bond is not for the delivery of

the property, or the payment of the judgment, in the alternative. It is simply for the delivery of the property; and the authorities cited in reference to contracts in the alternative, one alternative being legal, are not pertinent.

A performance of the contract is, as we have already seen, illegal. Becoming illegal, no action could be maintained on it. It stands now in the same category, as if it had been illegal in its inception. No action can be maintained against a man for not doing what it would be illegal for him to do. His ability to do the thing has nothing to do with the question.

The witness was competent; and for the error of his exclusion, the judgment is reversed, and the cause remanded.

We refer to *Haralson v. Walker*, (23 Arkansas, 415,) as an authority supporting the main propositions of this opinion.

JUDGE, J., not sitting.