# MORGAN, Adm'r, *vs.* NELSON, Adm'r.

[FINAL SETTLEMENT OF ADMINISTRATION.]

1. *Conversion by administrator; what not sufficient to prove.*—It is not sufficent evidence of a conversion of the chattels of the deceased, by an administrator, to prove that he took them into his possession, under his authority as such administrator, and worked the slaves on his own lands for several years; one year by order of court, but for the balance of the time without such order, and declared, at the same time, that he intended to work the slaves until he paid the debts of the deceased, and then give them and the land to his daughter, the widow of the deceased, and her child, who were the only distributees of the estate of said deceased.

2. *Devastvit; what not sufficient to charge administrator with.*—Proof that an administrator took possession of the slaves belonging to the estate of his intestate, and worked them on his own land, for the purpose of paying the debts of the deceased, without an order of court, from the 1st day of January, 1860, until they were emancipated, without accounting for the crops, is not enough to charge him as a *devastavit*, with the appraised value of such slaves, and interest thereon, on his final settlement.

3. *Administrator; what properly chargeable with.*—Under such circumstances, the administrator should be charged each year with the value of the hire of the slaves, as it became due, with interest therefor, until their emancipation by the government of the United States.

4. *Emancipation of slaves; to what date referred.*—The emancipation of slaves in this State is a fact which will be judicially noticed by the courts, and it must be referred to some particular date. It was effected by the nation, and not by the State. The only national act that decreed it, was the proclamation of the president, of the 1st of January, 1863. The struggle afterwards was merely an effort to prevent the proclamation from being carried into effect, and the total failure of the struggle, refers emancipation back to that date.

5. *Same; administrator, when chargeable with hire after that date, notwithstanding.*—But notwithstanding the event of emancipation is fixed by the act of the nation, at the 1st day of January, 1863, yet, if an administrator used the slaves of his intestate for his own profit, after that date, he should be charged with such profits, up to the date of the discharge of slaves from his control, by the results of the late war.

6. *Administrator; when not chargeable with value of slave, which came into his possession.*—An administrator should not be charged with the value of a slave which came into his possession in 1859, and died without his fault, in 1862; but only with the value of the hire of said slave, up to his death, and interest thereon.

7. *Attorney-at-law; administrator who is, entitled to counsel fees in his own behalf.*—An attorney-at-law, who is an administrator, is entitled, upon a proper case, to be allowed reasonable counsel fees, in his own behalf.

APPEAL from the Probate Court of Dallas.
Tried before the Hon. J. F. CONOLEY.

The facts of the case and the errors assigned, are sufficiently set out in the opinion.

MORGAN & LAPSLEY, for appellant.
W. M. BYRD and WATTS & TROY, *contra*.

[No briefs came into the reporter's hands.]

PETERS, J.—The bill of exceptions shows that Little Berry Vasser was appointed administrator of the estate of Hamlin F. Smith, deceased, by the probate court of Dallas county, in this State, on the 31st day of January, 1859, and as such, he took possession of a considerable personal estate left by said Smith at his death, which was properly appraised, and the inventory of appraisement was returned into said court, on the 1st day of July, 185., by Vasser himself. It was not sworn to, or subscribed by, Vasser as the administrator of Smith, as an inventory of said estate, made by him, but he returned no other inventory of said estate save this. Among the articles enumerated in this appraisement, were twenty-one negro slaves. The aggregate value of these slaves amounted to the sum of $17,700.

On the 7th day of February, 1859, an order was granted to Vasser to sell the perishable property of said estate, on a credit of twelve months, and another order of the same date authorizing him to keep the slaves belonging to said estate together for the year 1859; but it does not appear in what manner Vasser acted under these orders, if he acted at all. The record is silent upon this question. After this, Vasser died, but the record does not show with any certainty when he died; but facts are shown from which it may be conjectured that he died after the termination of the late war of the rebellion.

After Vasser's death, on the 5th day of March, 1867,

Richard M. Nelson, the appellee, was appointed administrator *de bonis non* of the estate of said Hamlin F. Smith, deceased, by said probate court of Dallas county, and thereupon he cited John T. Morgan as the administrator of the estate of the said Little Berry Vasser, deceased, " to a settlement of the administration of said Vasser, on the estate of said Hamlin F. Smith." Said Morgan, as such administrator of said Vasser, deceased, is the appellant in this suit.

On the 22d day of November, 1867, Morgan appeared in said probate court, and filed his account and vouchers for the final settlement of the administration of Smith's estate, the same that had been conducted by Vasser. To this account thus filed said Nelson appeared and filed several exceptions, which it is not necessary to notice in this opinion, as the fate of the case, in this court, does not depend upon the rulings of the court below on these exceptions, except so far as the slaves belonging to said estate, and the value thereof, and the interest on such value, is concerned. On the trial, which took place on the 22d day of November, 1867, Nelson moved the court to charge said John T. Morgan, as the administrator of Vasser, " with the appraised value of the estate received and taken into possession of said Vasser, as administrator aforesaid, to-wit : Twenty-three thousand eight hundred and seventy-one dollars, with interest thereon ; and alleged that said property had been lost to the creditors of the said estate of H. F. Smith, by reason of the said *devastavit* and maladministration of said L. B. Vasser, administrator as aforesaid, said John T. Morgan's intestate."

On the trial, Nelson offered " the entire record of the administration of said Vasser, on the estate of said H. F. Smith, deceased, comprising his appointment, returns, applications, orders, &c. ; also, the records of the circuit court of Dallas county, touching the suits against said Vasser, as administrator of said Smith, and the judgments, executions, and returns thereon. He also proved that said judgments and other claims, to a large amount, which had been presented to said Vasser as administrator aforesaid within the time prescribed by law, have been presented to

him as administrator *de bonis non*, and are still unpaid and outstanding claims against said estate of H. F. Smith, and that he has no assets of said estate in his hands with which to pay them." And the records of said probate court of Dallas county are made a part of the record in this cause, in the court below.

Nelson then offered Mrs. Eliza R. Smith, the widow of H. F. Smith, as a witness—said witness being also the daughter of L. B. Vasser, who testified " that L. B. Vasser, the administrator of said Smith, received about eight or ten bales of cotton belonging to said Smith at the time of his death; that said Vasser removed the negroes and other property of the estate of said Smith to a plantation belonging to himself, and near to the residence of said Vasser, her father; that she, witness, with her child, removed to, and resided on, the same place; and that her father, the said Vasser, agreed that she might have the use of said plantation for the improvements which she put on it; that she had about an equal number of negroes with the estate of her husband, the said H. F. Smith, and that said Vasser and she worked the negroes of the estate of said Smith and her own together on said plantation in partnership, and agreed to divide the crops; that they made, in the year 1859, on said place, ninety-four bales of cotton and two thousand bushels of corn; that they continued to work the said negroes on the said place, in the same manner, from the year 1859 until they were lost by emancipation of the slaves, by the result of the war, except one negro named Jack, who died in 1862;" that Vasser was a man of wealth, and said Smith had no lands at the time of his death.

Mrs. Smith also testified that " she had heard said Vasser say that he intended to pay the debts of said estate of H. F. Smith himself, and give the negroes to her and her child." She also stated that " her father, said Vasser, had agreed with her to work the hands of said estate of her husband with her hands, on the place belonging to him, as before stated, and divide the crops between them; that he received the crops so made in 1859 and 1860." To all the testimony of Mrs. Smith, appellant objected in the

court below, and to each part thereof separately, as being incompetent; because the witness was a distributee of the estate of H. F. Smith, and also, on the further ground that the evidence was illegal. But the objection was overruled, and the appellant excepted.

The value of the cotton and corn was proved, as fixed in the decree in this cause in the court below.

Upon this testimony the probate court decreed that said Richard M. Nelson, as administrator *de bonis non* of the estate of H. F. Smith, deceased, recover of John T. Morgan, as the administrator of the estate of L. B. Vasser, deceased, the sum of $33,002.59; and upon suggestion of insolvency of said Vasser's estate, this decree was ordered to be certified to the chancery court, sitting for the county of Dallas, in which the settlement of the administration of the estate of said Vasser was pending, and in which application had to have the same declared insolvent.

To this " decree, and separately to each ruling and decision therein," said appellant excepted; also, because no commissions were allowed said Vasser as said administrator, as aforesaid, upon the value of said negroes charged to him; and because said probate court refused to allow said Morgan, as administrator of said Vassey, any expenses for fees of attorney to represent him on his said settlement.

Besides the exceptions taken to the competency of Mrs. Smith as a witness for the appellee, on the trial below, and to her testimony as shown in the bill of exceptions, the appellant also " excepted to the decree, and separately to each ruling and decision therein." Under the practice now allowed in appeals from the court of probate, it would seem that such an exception would open all defects in the decree and proceedings in that court, which are apparent on the record, whether objected to specially or not. In matters of appeal from the probate court, the rule which must govern this court is section 2247 of the Revised Code, which is in these words: " Any party to a suit or proceeding aggrieved by a final judgment, decree, or order of the judge of probate, in such suit, or proceeding, may appeal to the circuit or supreme court therefrom, under the rules,

at the passage of this law (on the 19th February, 1867), regulating appeals from the courts of probate, and no bill of exceptions shall be required when the error complained of appears in the proceedings; and in all cases where it can be done, the appellate court shall render such judgment as the judge of probate should have done."—Revised Code, § 2247; *Watson and Wife v. Stone*, 40 Ala. 451, 462.

An examination of the record will show that the appellant is charged with the whole value of all the property mentioned in the inventory of appraisement of the estate of said Hamlin F. Smith, deceased, and among the articles therein enumerated, is twenty-one slaves, which are valued at the sum of seventeen thousand and seven hundred dollars ($17,700). The appellant is charged with this sum of seventeen thousand and seven hundred dollars, and interest thereon from the 22d day of July, 1860, on the grounds that said Vasser, as administrator as aforesaid, " had converted " the same, and was thereby guilty of a *devastavit*. It also appears that among these slaves there was one by the name of " *Jack*," who was valued at thirteen hundred dollars ($1300), and that this slave, " *Jack*, " died in 1862.

The abolition of slavery in this State is a fact, of which the courts will take judicial notice, without proof.—*Ferdinand v. The State*, 39 Ala. 706; 41 Ala. 124. But there has been, heretofore, reluctance and hesitancy in fixing the date at which this momentous event occurred. In the case above cited, it is said that it occurred before the 22d day of September, 1865. Nevertheless, some time must be fixed for the happening of this great event.

Slavery was a national interest, protected by national law, and it could only expire by a national act, in case the owners of the slaves were unwilling to give them up. It was an institution which depended upon force, and not upon right, for its preservation. No human being was ever created a slave. Slavery was the creature of force or fraud. Liberty cannot be the subject of bargain and sale. It is an inalienable right.—Declaration of Independence; Revised Code, p. 1; Const. of Ala., Art. 1, § 1. No christian jurist of any pretention to sanity, will now contend, with

hope of credence, before the intelligent and civilized world, that the slave may not free himself from his own chains, when he has the power to do so, or that, when once free, any law but the law of force or fraud can again reduce him to the injustice and degradation of slavery.—9 Jefferson's Works, p. 279. The great national decree, which laid slavery prostrate in the dust forever, upon this continent, was the proclamation of President Lincoln, issued on the 1st day of January, 1863. After that act, slavery was maintained only by force. It was thenceforth virtually abolished, and actually so, wherever the army of the United States had possession of the territories to which the proclamation extended; as much as it was at any time in the year 1865. The nation fixed the day for its termination, and, after that day, it was simply a struggle of the former masters of the slaves to prevent the decree of the nation from being carried into effect.—Proc. of Prest., January 1, 1863 ; Append. U. S. Stat. at Large, pp. 1268, 1267. The Alabama convention of 1865, and its ordinance, had as little to do with emancipation as they will have with the coming of the day of final wrath, when the grave will give up its dead. It would have been all the same had that convention never met. If this convention merely ratified the act of emancipation, its ratification had relation to the beginning of the act.—*Jackson, Ex dem. v. Richtmyer*, 13 John. R. 357 ; *Armstrong et al. v. Gilchrist*, 2 John Cas. 424 ; *Cushman v. Locker*, 2 Mass. 106.

This conclusion is supported by another view, which we will now briefly present. The abolition of slavery in Alabama, and other rebel territory embraced in the president's proclamation of January 1, 1863, was during the war, and in the conduct of the war, authoritatively proclaimed as the will of the nation, and it was consummated by the final triumph of the national forces in the war. It seems, therefore, an actual absurdity, as well as a legal impossibility, that the courts of our own country cannot ascertain the precise day, on and from which, this great event, of such recent occurrence should, in legal contemplation, be now deemed to have become operative. But no such day can be ascertained, if the *first* day of January, 1863, is not that

day. The doctrine of relation leads to the conclusion, that the day of the authoritative promulgation of the national will above referred to, upon and after the establishment of that will, as above referred to, is, in legal contemplation, the day of the consummation or accomplishment of what was thus proclaimed. The abolition of slavery is but one thing, necessarily made up of successive operations, consuming more than an instant of time ; and as the abolition cannot be said not to exist after it was begun, the intermediate lapse of time is not regarded, and the whole relates to the first moment, so as to make the act operative therefrom. From the beginning, the whole is one continuing act, and, therefore, legal in contemplation, it is done from the commencement.—*McKennon v. McLean,* 2 Dev. & Batt. 79 ; *Mells v. Bright et al.,* 4 *ib.* 173 ; 2 Bouv. Law Dict. 438, *Relation.*

But if it appears that Vasser, as the administrator of the estate of Smith, derived any profit from the use or hire of said slaves, after the first day of January, 1863, and before they were actually released from his control, by failure of the Confederate State government of Alabama, then he should account for the same.

In this same connection we may also say, that if the freedmen remained on the farms and plantations, or at the homes of their former masters, or elsewhere, in the care and under the control of said former masters, and there was no actual force used to compel them to do so, it was a consent on their part still to acquiesce in the usages of the old system of servitude on the former terms, without pay, except simply their support and lodgment, until the new relation was regulated by law, and the rights and duties of each were properly defined. The right to charge should have been exerted as soon as it accrued, or it was waived, when the former relation was continued, without objection. 2 Bouv. Law Dict. 639.

But, to the lasting honor of the new citizen, he has thus far shown himself worthy of his new estate. He has parted with his old master in peace and good will, and has shown himself too noble-hearted to quibble with him about pen-

38

nies, when he has received, in reward for his patience and his toil, a boon that money could not buy.

There is no proof that appellant's intestate at any time set up any title in himself to said slaves, enumerated in said inventory of appraisement, or that he exercised any dominion over them inconsistent with his right to control them as the administrator of said Hamlin F. Smith, deceased, before they were emancipated. He may have failed in his duty to hire them out, and he may have failed to make a proper return of their hire to the court, if he did; but unless this is shown to have been done to defeat the rights of the legal owner, it was not a conversion. There may be a *devastavit* of the assets of an estate; without a conversion. Here the taking was lawful. In such case there can be no conversion, unless there is a demand and a refusal to deliver the chattels taken to the rightful owner, or unless there is such an intermeddling with them or exercise of dominion over them, as is subversive or destructive of the dominion of the owner, or of the nature of the bailment under which they were held.—1 Ch. Gen. Pr. 566, marg.; 1 Ch. Pl. 179; Bac. Abr., *Trover ; Reid v. Colcock*, 1 Nott & McCord, 570 ; *Bristoe v. Burt*, 7 John. 254 ; *Duvall v. Mosher*, 8 John. 445 ; *Harris v. Saunders*, 2 Strob. 370 ; *Freeman v. Scurlock*, 27 Ala. 407 ; *Chase v. Blasdell*, 4 Min. 90 ; *Andrews v. Shattuck*, 32 Barb. (N. Y.) R. 396 ; *Moore v. McKibbin*, 33 Barb. (N. Y.) 246 ; *Hall v. Chapman*, 35 Ala. R. 553 ; *Whitney v. Slawson*, 30 Barb. (N. Y.) 276 ; *Conner v. Allen*, 33 Ala. 515 ; *Rand v. Oxford*, 34 Ala. 474 ; *Jones v. Allen*, 1 Head, (Tenn.) 626. The slaves were not then lost to the estate of Smith, by the conversion of them by Vasser. He ought not, then, to have been charged with their value on this account. Nor were they lost to the estate by any direct abuse, by sale or embezzlement, or by any maladministration, nor by any neglect on the part of said Vasser. But they were lost to the estate of Smith by emancipation. For this loss, Vasser was not responsible. This was no *devastavit.— Glover v. Taylor & Co.*, 41 Ala. 124 ; 4 Bac. Abr., *Bond*, 100.

The utmost, then, with which Vasser should have been charged, is the reasonable value of the hire of said slaves

from the first day of January, 1860, until they were emancipated; and interest on this hire from the time the hire was due. It was the duty of the administrator, after the first year expired in which he was authorized to keep the slaves together, viz: in 1859, to have hired them out, if he could have done so, and if he could not, this should have been shown to the court by competent proof.—Code, § 1751; *Henderson v. Renfro*, 31 Ala. 101. The court below, then, erred in charging the appellant, as the administrator of Vasser, with the full value of the slaves belonging to Smith's estate, as appears by the record.—*McCreliss v. Hinkle*, 17 Ala. 459.

It also appears from the record, that the slave " Jack " was valued in the appraisement at $1,300. It likewise appears that he died in 1862, and that the appellant was charged with his full appraised value, and interest thereon. This was error. The charge should have been for hire, and interest upon the hire, up to the death of Jack, in 1862.

As the cause will have to be sent back for a new trial in the court below, as the proofs furnish no evidence of the hire of the slaves belonging to Smith's estate up to their emancipation, and as it is quite likely that many of the other objections will not again arise, or that they will assume new shapes on another trial, their further notice here is omitted.

Under the Revised Code, which is the law that must govern this cause upon a new trial, Mrs. Smith is a competent witness for the appellee, subject to the provisions of section 2704 of the Revised Code.—Acts of 1858, p. 7 "An act to continue in force certain laws." And upon a proper case, the appellant will be entitled to reasonable counsel fees, in his own behalf, and his intestate to such commissions as the law allows.—*Pinkard v. Pinkard*, 24 Ala. 250; *Gould v. Hayes*, 19 Ala. 438 ; *Sterrett's Appeal*, 2 Penn. 419; *Liddle v. McVicker*, 6 Halst. 44; *Bates v. Vary*, 40 Ala. 421.

The evidence is not sufficient to enable the court here to render such judgment as the judge of probate should have done; the cause is therefore reversed and remanded.