NATHAN WALKER *versus* STEPHEN B. OSGOOD *& als.*

In debt on a replevin bond after a judgment for a return, the defendant, who replevied a horse from the plaintiff, an officer, who had seized it on an execution as the property of a third person, is not liable for its value, if the horse died during the pendency of the suit, without the fault of any one, *provided* the replevin suit was commenced in good faith.

ON FACTS AGREED; the full Court to render judgment and assess damages according to law.

The facts will be found in the opinion.

*Waterhouse & Emery*, for the plaintiff.

If a replevin suit be determined against the plaintiff in replevin, it shows that he had no right to the possession of the property, and his interference therewith was wrongful. *Farnham* v. *Moor*, 21 Maine, 508.

The law considers it a greater wrong to replevy without right from an officer than from a private person, as shown by the interest as damages. R. S., c. 96, § 12.

*Melvin* v. *Winslow*, 10 Maine, 397, is not opposed to this general principle. Horse died in that suit before judgment in the suit on which it was attached. In case at bar, horse was seized on final process, not to be kept as security, but to be sold after four days in satisfaction of a judgment; and horse did not die until long after the expiration of the four days. *Matterson* v. *Pearce*, 12 Mass., 407, and *Ladd* v. *North*, 2 Mass., 517, recognize the distinction.

*Wiswell*, for the defendants.

KENT, J.—The single question presented in this case is, whether a party who replevies an animal from the possession of an officer, who had *seized it on execution* as the property of a third party, and, pending the replevin suit, the animal dies, without the fault of any one, is liable on the replevin bond for its value, after judgment for a return. In *Melvin* v. *Winslow*, 10 Maine, 397, it was decided that where a horse had been *attached on mesne process* and replev-

ied by the defendant, and during the pendency of the suit the horse died, without fault, the defendant was not liable on the bond. And, in *Shaw* v. *Laughton*, 20 Maine, 266, it was held that receiptors, who had agreed to return the horse attached on demand, and the horse died a natural death, were exonerated thereby.

We feel bound to regard these decisions as authoritatively determining the points decided, and as settling the case before us, unless there is a distinction in fact and in principle between this case and those cited.

The distinction in fact, is, that in the case at bar the replevin suit was instituted on the day the animal was seized *on execution* by the officer, for the purpose of selling it to satisfy the same. It is urged that this distinction is vital, on the ground that, if the replevin suit had not been interposed, the animal would have been sold in four days and the proceeds thus secured to the creditors, whereas, in the cases cited, the animal was attached on *mesne process* and held only as security to await final judgment, the animal dying before such judgment.

Undoubtedly there is a distinction which fairly calls for consideration, and, if the ground of the former decisions was, as it is contended, that the seizure was on *mesne process* and not on execution, those cases would not be decisive.

The case of *Melvin* v. *Winslow*, 10 Maine, 397, was a case like this, of an attachment by a creditor of a horse as the property of his debtor, and a replevin by a third party. In neither case was it a controversy between two persons, both claiming title in themselves, but a question between an attaching creditor and a third party. The grounds of decision in the reported case, as given by MELLEN, C. J., are, in substance, that the plaintiff in replevin had as good a right to assert his title by action as the creditor had to attach the property, — that in both cases the act of taking was legal and lawful, — that although, if the action of replevin is decided against the plaintiff the law compels him to pay damages, — yet, *until that time*, he was not a wrong-

doer, but lawfully engaged in vindicating his asserted right. It was also held that, if the animal died without fault, whilst in the possession of the officer, and before any writ of replevin had been sued out, the officer would not be responsible.

The same doctrine was affirmed in *Shaw* v. *Laughton*, 20 Maine, 266, which was an action against receiptors to an officer. The defence was that the horse died, without fault, pending the replevin suit, and it was held that " the officer would be excused in such a case and so ought his receiptors to be." The Court say, that " the cases of *Carpenter* v. *Stevens*, 12 Wend., 589, and *Melvin* v. *Winslow*, 10 Maine, were on replevin bonds, but they are analogous in principle."

*Carpenter* v. *Stevens*, 12 Wend., was a case where, on an action on a replevin bond, it appeared that judgment for a return had been given, but that the animal had died, pending the replevin suit, without fault. It was held that the obligors were not liable. The Court finds the legal reasons for its decision as far back as the time of Lord Coke, 1 Inst., 206, " when the condition of a bond is possible at the time of making it, and, before the same can be performed, it becomes impossible by act of God, or of the law, or of the obligee, then the obligation is saved."

The result from these authorities seems to be, that the writ of replevin is one authorized by law to enable a party who, in good faith, asserts a claim of title or right of possession in a chattel to have this claim investigated and determined judicially.

In the English practice, as we understand it, the officer retains the goods replevied in his own possession, and is not allowed to deliver them to the plaintiff, until the question of property is decided in his favor. 3 Steph. N. P., 2487; *Willard* v. *Kimball*, 10 Allen, 212. In our practice, the sheriff delivers them to the plaintiff on his giving a bond to return them if he fails to establish his title or right. But, in both cases, the goods are, in a certain sense in the custody of the law, held to await the decision between the

claimants. The party who replevies, having given the bond required by the statute, is not a wrongdoer, if he acts fairly, although the result may show that he was mistaken in his belief of his right of property.

When a person, without process of law, undertakes to assert his right to the possession of personal property by seizing it, or taking it from the possession of another, without his consent, he does so at his peril, and is liable for an illegal act at the moment of its perpetration, and the subsequent death of an animal or the destruction of the property cannot avail him in defence.

The law favors an appeal to judicial tribunals to determine questions in controversy, rather than the forcible assertion of assumed rights. It provides in the action of replevin a mode by which a party may obtain possession, and have the question of title afterwards determined, — the rights of both parties being in the meantime protected. There are many cases where both parties are mainly anxious to have the *title* to the specific thing, rather than damages for its value, or for injuries to it, determined at law. It is therefore a lawful act, and not a trespass or wrong in the party suing out the writ, nor is it a trespass in the officer to serve the same, if in due form and with a sufficient bond, although it may be finally determined that the property was not in the plaintiff, and although the replevin suit was not against the rightful owner, and he was no party to the proceedings. *Willard* v. *Kimball*, 10 Allen, 211.

If, then, the law not only authorizes, but favors this mode of bringing the question of title to the peaceful and orderly arbitrament of a judicial tribunal, the right of a party to institute it cannot depend upon the greater or less injury to the other party, claiming the same property. It is true it may be of great pecuniary injury to him. The law provides for damages at least equivalent to interest, and in some cases much beyond simple interest.

In the case before us, the objection is that, by the interposition of the replevin suit, the creditor, who had seized the

Walker *v.* Osgood.

property, was prevented from selling it at once, and before the death of the animal. But in almost every case of attachment on *mesne process*, and a replevin of the goods attached, the creditor is delayed in enforcing his judgment by the pendency of the replevin suit. The controversy is almost universally concerning the title to the goods attached, and not on the suit on which they were attached. This is often defaulted at the first or second term, there being no pretence of a defence, and the judgment might have been obtained and the goods sold on execution without delay, if the replevin suit had not been instituted. If the rule now contended for should be established, we see no good reason why, if an animal died after default in the suit on which it was attached and before the decision as to the title in the replevin suit, the obligors in the bond should not be liable for its value. There are many other cases, where the defendant in replevin might be able to establish special or irremediable damages by the delay occasioned by the suit. Indeed it would be very difficult, if not impossible, to draw the line or to establish any better rule than the one which seems to have been established, from the nature of the action, and the remedies which have been provided for the respective parties. As a general rule, property legally replevied may be considered, so far as this question is concerned, as in the custody of the law, awaiting the decision of the Court upon the title in controversy. Every person, who, in good faith claims such title, has a legal right to replevy the property, by the process given by the statute, and in so doing he incurs only the liabilities and duties imposed by law. We have seen that the death of an animal without fault, pending the suit, exonerates from liability.

It will be observed that we assume, as one of the elements in our decision, that the replevin suit was instituted and prosecuted in good faith and in the honest belief of a good title. We are not called upon to determine whether there may not be a different rule applied to cases of malicious suits, or those instituted in bad faith, without any honest

belief of a title in the party, or with the sole design to defeat or delay creditors of another, without any show of right in himself. We should be unwilling to lend any encouragement to the institution of any such "false, groundless or unlawful suits."

Judgment for the plaintiff for the value of the cow only, twenty dollars and interest thereon at 12 per cent. from time of taking, Dec. 5, 1862, and costs.

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and TAPLEY, JJ., concurred.