## T. A. HERRON v. BONDURANT & TODD.

1. NEW TRIAL — WHEN GRANTED UPON THE FACTS. — This court will set aside the verdict of a jury which, upon a review of the testimony, is found to be manifestly wrong, where the circuit court refused a new trial and a bill of exceptions embodying all the evidence was tendered.

2. EVIDENCE — DECLARATIONS INCOMPETENT, WHEN. — Declarations and representations made against the interest of a party, in his absence, and without his authority, knowledge or sanction, are not binding on him, and cannot affect his interest.

3. CASE IN JUDGMENT. — In this case the verdict was set aside upon a review of the evidence.

4. VERDICT — CORRECTION OF, BY CIRCUIT COURT. — To correct or change in any manner the verdict of a jury, as the result of interrogating them on presentation of their verdict, is a power, which should be exercised by a circuit court with the greatest caution, and only in the clearest cases, when no possible question of the propriety or regularity of such proceeding can be raised.

ERROR to circuit court of Washington county. SHACKLEFORD, J.

The facts appear in the opinion of the court.

*W. & J. R. Yerger*, for plaintiff in error.

1. The court erred in permitting the plaintiff in execution to read the judgment in their favor against the defendants in attachment. No issue was before the jury touching the validity of their execution, or their right to sue it out, and the judgment was totally irrelevant, and did not tend in any degree to establish the issue which the jury was trying. The evidence was entirely irrelevant, and could have had no other effect than to confuse and embarrass the jury, and prejudice improperly the mind of the jury against the claimant. Where illegal testimony is permitted to go before the jury, a new trial ought always to be granted, because it is impossible for the court to say what effect it may have had upon the minds of the jury. This rule will always be applied, unless the valid evidence leaves no question in the mind of the court that the jury could not have found any other verdict than they did find on the evidence properly admitted.

2. But the court erred in rendering judgment for $822 on the value of the property.

The jury did not, in their verdict, assess the value of the property, and the judgment recites that the plaintiffs elected to take judgment for the value assessed by the officer, "which value is $822." This was done under the provision contained in art. 298, Rev. Code, p. 533, which is in these words: "And in case the jury fail to find the value of the property, the plaintiff may, at his election, take judg-

ment for the value assessed by the officer, without resorting to a writ of inquiry."

In looking at this case, it will be seen at once that the court could not, on the facts as they appeared in the evidence, render a judgment for the aggregate sum of $822. There were fourteen mules levied upon. The judgment in these cases is the same as would be given in an action of *detinue* for the specific property, if to be had, and if not, for its value as assessed by the jury. Art. 299, p. 533, Rev. Code. As there were fourteen mules it was necessary to have the value of each assessed, and not the value of the whole in the aggregate. This is very clear. Because the claimant had a right to discharge his obligations by surrendering the specific property, and if any of them died without his fault or negligence, so that it could not be surrendered, then *pro tanto*, he and his sureties were relieved from the bond. See Walker v. Osgood, 53 Me. 422; Glover v. Taylor, 41 Ala. 124. It was, therefore, clearly necessary for the verdict or for the return of the officer to affix a value to each mule, or else it was necessary to have that done by a writ of inquiry. No judgment could be properly rendered for the aggregate value of the fourteen mules.

3. But the court should reverse the judgment because of the action of the court in altering the verdict rendered by the jury. That verdict, as brought into court, was: "We, the jury, find a verdict for the claimant or in favor of Bondurant & Todd." It was the duty of the court to have sent the jury back to their room, with instructions to return a verdict either for the claimant or else the plaintiff, leaving it for the jury, uninfluenced by outside pressure and questions, which way they intended their verdict to be.

4. But if the court should be of opinion that none of these grounds are well taken, then we feel satisfied that the judgment should be reversed, because of the refusal of the court to grant a new trial. The great preponderance of evidence is not only against the verdict, but there is, in fact, no evidence to sustain the verdict or to establish the

property to be liable to the execution as the property of the defendant in attachment. The rules applicable to the trial of the claim of property taken in attachment are the same that are applicable to property seized on execution, and it is established in such cases that, "on the trial of an issue, made upon a claim of property, the burden of proof shall be on the plaintiff in execution, and such issue shall be tried and governed by the same rules which regulate and govern the trial of an issue in an action of detinue." Rev. Code, p. 533, Ark. 298.

It was necessary, under this provision of the law, to show affirmatively that the property belonged to the defendants in attachment, or some one of them. On looking to the proof it will be seen that the proof is positive that it did not belong to them, or either of them, when the attachment was levied, but had never belonged to them, and there is nothing which tends to prove any thing else.

*Johnston & Johnston*, for defendants in error.

The claimants insist, first, that the verdict is contrary to the evidence. We deem it sufficient to allude merely to the rule adopted by this court in granting new trials on this ground. A verdict will not be set aside unless it is opposed by a great preponderance of evidence, or be without any evidence to support it, or unless it is manifestly wrong. 36 Miss. 660.

The rule in another case is thus stated: A verdict will not be set aside because against the weight of evidence, even although upon the evidence the jury should have reached a different conclusion. 3 How. 219; 4 ib. 338. And again, a verdict will not be set aside unless it is a very clear case that justice has not been done. 1 Smedes & Marsh. 381; 5 ib. 21. The verdict in this case is not clearly wrong, but, on the contrary, it is supported by the evidence.

There are several circumstances connected with the ownership of the mules not explained, or attempted to be

explained, in the evidence, as strongly indicative of fraud on the part of Herron and the defendant.

In cases of this kind, it rarely happens that fraud can be proved by direct evidence, but must, from its nature, be established indirectly.

It appears from the record that the claimant only objected to the introduction of the judgment in the attachment suit. This judgment was part of the record in the case. The admission of this judgment does not constitute error. At all events it is clear that its introduction could not have prejudiced the claim of Herron. As to the third ground contained in the motion, we reply that, where there is any doubt or uncertainty in the language employed by a jury in returning their verdict, the judge may make such inquiry as will enable him to understand their will and intention, and may direct the verdict thus ascertained to be recorded. Gibson v. The State, 38 Miss. 295. In this case it is manifest that the jury intended to find for the plaintiffs, although the word "claimant," instead of "plaintiff," is used. The court, from its examination of the jury, was evidently satisfied that this was a clerical error, and the jury really intended to render a verdict for the plaintiff. It is beyond all reason to say that Herron is entitled to the property through this clerical error, and that the judge was powerless to correct such a mistake.

TARBELL, J. :

A lot of mules having been seized by attachment at the suit of defendants in error against Burbridge and others, the property was claimed by T. A. Herron, in the mode pointed out by statute. This issue came on to be tried at the Washington county circuit court, in 1870, resulting in a verdict for the plaintiffs, in attachment. Whereupon the claimant sued out a writ of error. In this court the following are assigned as errors in the court below: 1st. In permitting the plaintiffs to read the judgment in their favor against defendant in attachment; 2d. In rendering judgment

for the aggregate value of all the mules, instead of having the value of each mule found by the jury by writ of inquiry or by the assessment of the officer levying the attachment; 3d. In amending the verdict of the jury; 4th. In refusing a. new trial. The motion for a new trial was on the following grounds: 1st. The jury found contrary to the evidence; 2d. The court erred in allowing the plaintiff, against the objections of claimant, to read the note or bill sued on in the suit against Burbridge et al., and the judgment rendered therein; 3d. The court erred in questioning the jurors touching their verdict, and in having the same remodeled in accordance with the statements of jurors, without the consent of claimant. 53 Me. 422; 41 Ala. 124..

It is unnecessary to discuss all the points presented for our consideration. We may observe, however, in reference to the action of the circuit judge in correcting or changing the verdict of the jury, that it is a power which should be exercised with the greatest caution, and only in the clearest cases, where no possible question of the propriety or regularity can be raised; otherwise, it is better to direct the jury to retire for the purpose. In regard to the merits of this case, if any fact is established by the testimony, it is certain that the animals in controversy belonged absolutely and indisputably to the claimant alone, or they were the property of Burbridge & Herron, partners in planting. The record is wholly without legal proof to show title to these mules in the defendants in attachment, exclusive of the partnership interest of Herron.

A captain of a Kentucky steamboat testified that in January, 1866, forty-nine mules were delivered on board the steamer commanded by him, at Louisville, Kentucky, said to belong to Herron, who being indebted to the witness, the latter caused an attachment to be levied on five of the mules, as the property of Herron, when they were claimed by young James Burbridge to belong to him, whereupon the attachment was discharged. This witness, in answer to cross-interrogatories, stated that the man in charge of the mules

represented them to be the property of Burbridge & Herron, and that they were so entered on the books of his boat.

Another witness testified that he was employed to take charge of the mules from Kentucky to Mississippi, with instructions to deliver them to Herron; that the mules were released from the Kentucky attachment on the note, bond or writing of young Burbridge; that young Herron, brother of claimant, paid him for his services and gave a draft for the freight on the mules on Oscar Burbridge, in New Orleans; the mules were delivered as the property of Burbridge & Herron, and young Burbridge said they belonged to his brother.

A clerk in the house of Bondurant & Todd testified that he understood Burbridge and Herron to say, in 1866, they were copartners in raising cotton.

A Mr. Link of Louisville, Ky., testified that he was employed to take charge of these mules from Kentucky to Mississippi; that General Burbridge employed G. L. Postelthwaites to deliver them to Major Herron; that when the mules were attached young James Burbridge said the mules belonged to S. G. Burbridge, and James Burbridge gave his own written obligation to secure the release of the mules; that, on arriving in Mississippi, Major Herron was not at home, but his brother, young Herron, said he was authorized by the major to receive the mules and to pay the expenses of the trip, which he did; that it was said at the landing that Burbridge and Herron were in copartner ship in planting.

W. R. Trigg and B. A. Offult testified for plaintiff that they heard S. G. Burbridge say, in the spring of 1867, he had an interest in the planting operations of T. A. Herron.

W. P. Montgomery, called by plaintiffs in attachment, testified that he heard Herron say in 1867 that Burbridge was not his partner, and had no interest or connection of any kind with him.

S. G. Burbridge testified, that in 1866 his wife and sister,

in consideration of advances, were to have a portion of the crop or profits thereof raised by Herron; that the year 1866 was disastrous, and every dollar invested was sunk; that in January, 1867, the parties settled, and every thing on the plantation reverted to Herron and became his absolutely; that at no time after January, 1867, did his wife, or his sister, or O. H. Burbridge, or T. B. Burbridge, or witness here, have, own or claim any interest whatever in the property levied on in this case, or in the plantation interest of Herron.

There is not in the record the slightest intimation that the representations made in Kentucky as to the ownership of the mules, was by the authority, knowledge or sanction of Herron, or of S. G. Burbridge, nor is there any legal evidence to justify the conclusion of the jury. No man can be rightfully deprived of his property on the unauthorized and unsanctioned representations of others, made hundreds of miles from the real parties in interest, without their knowledge. See Clark v. Edwards, 43 Miss., and authorities therein referred to.

The verdict is clearly contrary to law and evidence. The mules were the property of Herron, or of Burbridge and Herron. They most assuredly, upon this record, did not belong to the defendants in the attachment. The verdict is too manifestly wrong to be sustained. There is nothing in the record impeaching the testimony of S. G. Burbridge, or to show that it was attacked for any cause. The facts established by the only legitimate evidence in the cause are, that certain of the Burbridges and Herron were copartners in planting in 1866, owning together a number of mules and other property, and that in January, 1867, prior to the attachment in this case, the copartnership was terminated by a settlement, and the property was transferred to Herron, who then became the sole owner thereof, and the Burbridges ceased to have any further interest therein. So far as the record shows, this evidence was not only not impeached, but not attacked. The declarations

and representations of parties in Kentucky, without the knowledge, sanction or authority of Herron or his partners, are entitled to no consideration, as at present presented. *Vide*, authorities above cited.

The judgment is reversed and the cause remanded.