## CRAM v. WHITEHEAD.

No. 3789.   Decided July 10, 1922.   (208 Pac. 534.)

1. APPEAL AND ERROR—APPEAL HELD TO BE TAKEN AND PERFECTED IN TIME. Where judgment for plaintiff was served on a defendant and filed with the clerk of the court April 11, and notice of intention and motion for a new trial was filed April 14, which motion was overruled September 8 following, and the orders were made extending time for preparing, serving, and filing bill of exceptions to November 20 following, and defendant's proposed bill of exceptions was served November 5, and an order was made settling and allowing a bill of exceptions November 19, and February 28 following a notice of appeal was served and filed and an undertaking on appeal filed, the appeal was taken and perfected in time.

2. EXCEPTIONS, BILL OF—REFUSAL TO ACCEPT SERVICE OF BILL OF EXCEPTIONS HELD TO AUTHORIZE TREATING ATTEMPTED SERVICE AS LEGAL. Under Comp. Laws 1917, § 6969, providing that a party shall within 30 days after entry of judgment in jury trials or notice of entry of judgment in actions tried without a jury prepare a bill of exceptions and serve it or copy of it upon the

adverse party, where the adverse party refused to accept service or have anything to do with it, the court will treat the bill of exceptions as having been legally served.

3. EXCEPTIONS, BILL OF—BILL OF EXCEPTIONS REFUSED BY PARTY WHO OFFERED NO AMENDMENTS HELD PROPERLY SETTLED WITHOUT NOTICE OF TIME OF SETTLEMENT. Under Comp. Laws 1917, § 6969, providing that, within 10 days after service of a bill of exceptions by the losing party on the adverse party, the latter may propose amendments thereto and serve them on the losing party, and that the proposed bill and amendments must be presented by the party seeking settlement of the bill to the judge who tried or heard the case upon 5 days' notice to the adverse party, or be delivered to the clerk of the court for the judge, where defendant prepared a bill of exceptions and presented it to plaintiff, who refused to accept service or have anything to do with it, presenting the bill to the trial judge and having him sign it, after the statutory time for settling the bill had passed and no amendments had been proposed by the plaintiff, was proper, since the provisions of the statute with respect to designating when and the place where bill of exceptions will be settled or allowed and the requirement of giving notice thereof applies only to cases in which there are amendments proposed and not allowed or agreed upon by the opposing party.[1]

4. TRIAL—PERMITTING CASE TO BE REOPENED AFTER MOTION FOR NONSUIT HELD PROPER. In an action by a property owner against a person for conversion after introduction of evidence by plaintiff and motion by defendant for nonsuit, granting permission to plaintiff to reopen the case to introduce further proof was proper.

5. TROVER AND CONVERSION—"CONVERSION" DEFINED. A "conversion" is any act of dominion wrongfully exerted over another's property in denial of his right or inconsistent with it (Words and Phrases, First Series, Conversion).

6. TROVER AND CONVERSION—TAKING AND USE OF ANIMAL HELD A CONVERSION. Where a buffalo, valuable as a show animal because of his ability to throw riders, was rendered practically valueless by improper use after being taken from the keeper by defendant without the consent of the owner, who was denied the right of repossession unless he paid the feeding expenses for which the animal was sold, defendant was liable for con-

---

[1] *Love* v. *St. Joseph Stock Yards Co.*, 51 Utah, 305, 169 Pac. 951.

.version, though the owner had promised to bring the animal and exhibit him.

FRICK, J., dissenting in part.

Appeal from District Court Fifth District, Washington County; *J. H. Erikson,* Judge.

Action by John S. Cram against George F. Whitehead. From judgment for plaintiff, defendant appeals.

AFFIRMED.

*George R. Lund,* of St. George, *O. A. Murdock,* of Beaver, and *Hancock & Barnes,* of Salt Lake City, for appellant.

*Higgins & Higgins,* of Fillmore, for respondent.

CORFMAN, C. J.

Plaintiff commenced this action against the defendant in the district court of Washington county to recover the value of a certain buffalo alleged to have been wrongfully taken from the possession of plaintiff and converted by the defendant to his own use. In substance it is alleged in the complaint that plaintiff and one Gideon Findlay purchased said animal for, and that it was of the value of $1,000; that "the principal value of said animal was as a show feature in his determination and ability to throw his rider when ridden; that since the purchase of said animal by the plaintiff and his associate, it had never been successfully ridden, but had thrown every person who had attempted to ride him, and by so doing had become quite notorious over the state of Utah and had engendered fear in the hearts of many of the 'broncho busters,' who were noted for their daring and ability in riding wild animals"; that since the purchase of said buffalo as aforesaid plaintiff and his associate had "studied him carefully, kept him in fine fettle and condition, and never allowed him to be ridden more than once in any one day"; that on or

about December 28, 1919, the defendant "without the knowledge or consent of the plaintiff or his partner, and contrary to their will, willfully and wrongfully assumed possession and control over said animal and took him  *  *  *'' from Cedar City to St. George and exhibited him at a midwinter carnival lasting three days; that at said exhibition defendant allowed said buffalo to be ridden three times in one day and until he became completely conquered and broke to ride, "so that he could be ridden like an old cow without any resistance before a large concourse of people from many parts of this state and from various other states, and thus ruined for the purposes for which he was kept by plaintiff,'' and rendered practically worthless. Plaintiff further alleged that he is now the sole owner of said animal, and by reason of the premises has been damaged in the sum of $1,000, for which he prayed judgment, "and for any or additional relief that to the court may seem just.''

The defendant by his answer denied generally the allegations of the complaint, and, as a further defense, affirmatively alleged that the buffalo had been taken from Cedar City to St. George under a verbal agreement entered into by and between the plaintiff and a committee of the Dixie Carnival Company, represented by defendant, whereby said buffalo was to be exhibited at said carnival at St. George for the agreed price of $200; that in the taking and exhibiting of said animal it had been well cared for, not overridden nor overworked, and that after said carnival it could give as good an exhibition as it ever did; that in pursuance of said verbal agreement the Dixie Carnival Company paid a feed bill on said buffalo of $78.50 and $50 for transportation charges from Cedar City to St. George, and at the conclusion of the carnival notified the plaintiff that they held said animal at his disposal and tendered, and offered to pay him the balance due and owing on the contract; that afterwards said carnival company paid out the balance owing to the plaintiff on said contract for the care and keep of the buffalo.

Plaintiff, by a reply, denied the affirmative matters alleged in the answer.

The case was tried to the court without a jury. The court after hearing the evidence made and entered its findings of fact and conclusions of law and entered judgment in plaintiff's favor and against the defendant for $1,000, interest and costs. From that judgment defendant appeals.

At the outset plaintiff has moved to dismiss the appeal and also to strike the defendant's bill of exceptions.

1. It is alleged in the motion to dismiss that the appeal was not taken and perfected in the time allowed by law. The record before us shows: Judgment was served upon the defendant and filed with the clerk of the court April 11, 1921; notice of intention and motion for new trial served and filed April 14, 1921; order made overruling motion for new trial on September 8, 1921; order made and entered extending time to and including November 6, 1921, within which to prepare, serve, and file bill of exceptions on October 3, and on November 4, 1921, a similar order was made extending time to and including November 20, 1921; November 5, 1921, defendant's proposed bill of exceptions was served on plaintiff as per affidavit of counsel for defendant; November 19, 1921, order made by the court settling and allowing bill of exceptions; February 28, 1922, notice of appeal served and filed;. February 28, 1922, undertaking on appeal filed.

From the foregoing it appears that the appeal was taken and perfected in time, and therefore the plaintiff's motion to dismiss the appeal must be, and is, denied.

2. Plaintiff has moved to strike the defendant's bill of exceptions upon the following grounds:

"(1) That no bill of exceptions was ever settled or allowed, or filed, or served, as required by law and within the time allowed by law for serving, filing, and having settled and allowed a bill of exceptions upon appeal; (2) that no notice was ever served upon the plaintiff of any time or designating any place at which the defendant would ask the court to settle and allow his proposed bill of exceptions, as required by Comp. Laws Utah 1917, § 6969; (3) that the judge of the trial court never notified respondent of any time designated by the court for the settlement and approval of appellant's proposed bill of exceptions, and no notice was given by the clerk of the court of the designation of any time set for the hearing,

or otherwise, of the appellant's proposed bill of exceptions, as required by said section 6969 aforesaid."

There is no merit in the contention made by the plaintiff that the defendant's proposed bill of exceptions was not served upon him. The record shows that defendant's counsel, on November 5, 1921, took the proposed bill of exceptions to the office of the plaintiff's attorneys of record and requested them to accept service of the bill of exceptions, which they refused to do according to their own affidavit in support of plaintiff's motion to strike. We think the statute, section 6969, upon which plaintiff relies, fully contemplates that, when the party desiring to take an appeal presents within time a proposed bill of exceptions to the opposing party for the express purpose of serving it upon him, it becomes his duty to accept service, and that upon his refusal to do so the appealing party may, and the courts will of necessity have to, treat the bill of exceptions as having been legally served.

Treating the bill of exceptions as having been served upon plaintiff, as we must do under the circumstances, the next question that confronts us is whether said statute, section 6969, was thereafter complied with. Said section provides:

"* * * Within ten days after such service, the adverse party may propose amendments thereto, and serve the same, or a copy thereof, upon the other party. The proposed bill and amendments must, within ten days thereafter, be presented by the party seeking the settlement of the bill to the judge who tried or heard the case, upon five days' notice to the adverse party, or be delivered to the clerk of the court for the judge. When received by the clerk, he must immediately deliver them to the judge, if he be in the county; if he be absent from the county, and either party desires the papers to be forwarded to the judge, the clerk must, upon notice in writing from such party, immediately forward them by mail or other safe channel; if not thus forwarded the clerk must deliver them to the judge immediately after his return to the county. When received from the clerk, the judge must designate the time at which he will settle the bill, and the clerk must immediately notify the parties of the designation. At the time designated, the judge must settle the bill. If no amendments are served, or if served are allowed, the proposed bill may be presented, with the amendments, if any, to the judge for settlement, without notice to the adverse party."

The provisions of the statute just referred to are plain and unambiguous. They clearly provide that when the bill of exceptions is served or presented to the opposing party, he may have 10 days thereafter in which to prepare amendments thereto and serve the same, or a copy thereof, upon the appealing party. The appealing party may accept the amendments or refuse to do so, in which latter case the matter of their allowance will be determined by the judge in the manner provided by statute. In this case, as shown by the affidavit of plaintiff's counsel, when the proposed bill of exceptions was presented to the plaintiff by the defendant, the plaintiff refused to accept service or to have anything to do with it. Under such circumstances, there was nothing left for the defendant to do but to treat the bill as having been duly served and present it to the judge for his signature, as defendant did. The bill of exceptions having been presented to the trial judge without any proposed amendments thereto, after having been served upon the plaintiff, and the statutory time having expired for settling the bill and no amendments having been proposed, or objections made to the settlement thereof, all the judge was required to do was to perform the mere perfunctory act of affixing his official signature thereto, after which, upon the filing with the clerk of the court, it became the duly authenticated bill of exceptions in the case to be considered by this court upon appeal. The provisions of section 6969, supra, relied on by plaintiff, with respect to designating the time when and the place where a bill of exceptions will be settled or allowed, and the requirement of giving notice thereof, apply only to cases in which there are amendments proposed and not allowed or agreed upon by the opposing party. *Love* v. *St. Joseph Stock Yards Co.*, 51 Utah, 305, 169 Pac. 951. Therefore, for the reasons stated, the plaintiff's motion to strike the bill of exceptions must also be denied.

This brings us to a consideration of the merits of defendant's appeal. He assigns as errors or grounds for a reversal of the judgment the following:

"(1)   The court erred in failing to grant defendant's motion for a nonsuit.

"(2)   That the court erred in permitting plaintiff to reopen his case.

"(3)   That the court erred in overruling defendant's motion for a new trial.

"(4)   That the decision is against the law, in this, that there is no evidence in the case of any conversion on the part of the defendant.

"(5)   That the evidence is not sufficient to support the judgment."

The record shows that during the course of the trial plaintiff, after introducing evidence in support of the allegations of his complaint, rested his case. Defendant then moved for a nonsuit, and plaintiff thereupon applied for and was granted permission by the court to reopen his case for the purpose of introducing further proof. After the court had received further evidence in plaintiff's behalf, defendant renewed his motion for a nonsuit, which motion was denied by the court. The defendant not having offered any evidence in support of either the denials or affirmative allegations of his answer, the court proceeded to render its decision.

Under the circumstances, we think it was proper and right for the trial court to permit the plaintiff to reopen his case and introduce further evidence after defendant had moved for a nonsuit.

The other assignments of error all relate to the sufficiency of the evidence, particularly as to whether the evidence was sufficient to support the judgment rendered by the trial court. The plaintiff sued for the conversion of his property. The defendant rightfully contends that to support such an action it was incumbent upon the plaintiff to prove "either (a) a wrongful taking, or (b) a denial of plaintiff's right of ownership or possession as well as a refusal to give up possession on demand." The evidence shows conclusively that the plaintiff and one Gideon Findlay, in the month of September, 1919, had acquired and were the owners of a buffalo bull. Just to what extent this animal was capable of engendering fear in the hearts of "broncho busters," and as to whether

he had attained the reputation claimed for him by his owners, the record is not altogether clear, nor does it matter particularly for the purposes of determining this appeal. We remark, however, in passing, that there is evidence in the record tending to show that the buffalo on more than one occasion demonstrated some ability as a "bucker," and his powers in that regard ought not to be seriously questioned. One thing is absolutely certain: He had a value as a show animal. No doubt, when he was properly exhibited, all who had the good fortune to witness him in action greatly admired him for "his determination and ability to throw his rider." Plaintiff's evidence shows that at a fair in 1919 his owners offered $200 for anybody that would ride and $500 to any one that would ride the buffalo and stick." The defendant desired to have the buffalo exhibited at a midwinter carnival to be given at St. George late in December, 1919. For that purpose he applied to the plaintiff to have him brought to St. George. The plaintiff promised the defendant that if nothing happened he would bring the buffalo to St. George and exhibit him for $200. Afterwards, owing to sickness in plaintiff's family, the plaintiff was unable to take the buffalo to St. George. The buffalo was then at Cedar City in charge of a keeper for his owners. The defendant, without authority from the owners of the buffalo, ordered him brought to St. George, and the plaintiff's agent or keeper of the animal consented, without knowledge on the part of the owners until after the buffalo had been exhibited at the said carnival. An expense bill was incurred for feeding and caring for the buffalo while at the carnival which the defendant refused to bear. Thereupon plaintiff refused to repossess the buffalo, and afterwards it was sold to defray said feed bill and expenses later incurred in keeping and caring for it. There is also evidence in the record tending to show that the buffalo was worth $1,000, the amount for which judgment was rendered against the defendant. We are of the opinion that, under the facts and circumstances as shown by the record, the trial court's findings and conclusions that the defend-

ant took the plaintiff's property wrongfully and converted it to his own use should be sustained.

We need not enter into an extended discussion of the elementary principles of the law of conversion. The defendant's taking the buffalo from the possession of its owner, and thereafter using it for exhibition purposes the way it was taken and used, was wrongful. It was a denial of the owner's rights and wholly inconsistent with them. The promise of the plaintiff to take the animal to the carnival and exhibit him for a price of $200 did not operate as a license for the defendant to take and exhibit him without the owner's consent. The law with respect to what will constitute a conversion of another's property is well stated in 5 Fletcher, Cyc. Corp. § 3446, to be:

**5, 6**

"Any act of dominion wrongfully exerted over another's property, in denial of his right, or inconsistent with it, may be treated as a conversion."

Again, in 2 Words and Phrases, First Series, p. 1567:

"It is not essential to a conversion which will support the action of trover that the defendant should have the complete manucaption of the property. An intermeddling with or dominion over the property of another, whether by the defendant alone or in connection with others, which is subversive of the dominion of the true owner and in denial of his rights, is a conversion"—citing *Freeman* v. *Scurlock*, 27 Ala. 407.

The plaintiff's evidence shows conclusively in this case that the defendant took and in connection with others used the plaintiff's buffalo in a way that was unauthorized. In fact, plaintiff's evidence tends to show that the buffalo was rendered practically valueless after being taken by defendant. Moreover, plaintiff was denied the right to repossess his property unless he would comply with certain conditions sought to be imposed upon him and to which he had never consented or agreed to comply with.

As it appears from this record, the trial court was right in denying defendant's motion for a nonsuit and in rendering judgment for the plaintiff.

The judgment is therefore affirmed, with costs.

WEBER, GIDEON, and THURMAN, JJ., concur.

FRICK, J., concurs in the order affirming the judgment, but dissents from the views expressed herein on the question of practice.